**Philip H. SCHNABEL, Plaintiff–Appellant,**

v.

**Gary ABRAMSON and Legal Aid Society of Orange County, Inc., Defendants–Appellees.**

**Docket No. 99–9385**

United States Court of Appeals, Second Circuit.

Argued: June 19, 2000

Decided: Nov. 8, 2000

Michael H. Sussman, (Stephen Bergstein, on the brief), Goshen, NY, for Plaintiff–Appellant.

Eric C. Stuart, Hedinger & Lawless, L.L.C., New York, NY, for Defendants–Appellees.

Before: MINER, McLAUGHLIN, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

This case presents two questions: (1) whether the Legal Aid Society of Orange County ("Legal Aid") is a state actor amenable to suit under 42 U.S.C. § 1983 (" § 1983"); and (2) whether, in the wake of the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), a district court still may grant a defendant's motion for summary judg-

1. In the intervening months, Legal Aid had filled the position with other (younger) candi-

ment on a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, when a plaintiff has established a prima facie case of discrimination and offered evidence that defendants' legitimate, nondiscriminatory reasons for firing him were pretextual. We answer "No" to the first question and "Yes" to the second, and thus affirm the decision of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*) to grant defendants' motion for summary judgment and dismiss plaintiff's claims.

## BACKGROUND

The following facts are not disputed unless otherwise indicated. Plaintiff-appellant Philip Schnabel was hired in November 1994 as an investigator by defendant Legal Aid and, in particular, by defendant Gary Abramson, Legal Aid's Chief Attorney. Schnabel replaced Steven Sherlock, a 28–year–old who had resigned in August 1994—after five years in the position—in order to attend law school.[1] At the time Schnabel, a lawyer and retired police officer, was hired, he was 60 years old, while Abramson was 51.

Over three years later, at a meeting of the Legal Aid Board of Directors on December 3, 1997, Abramson recommended that Schnabel be discharged and replaced by Sherlock, who had completed law school (but failed the July 1997 bar examination), in light of Sherlock's "superior ability in dealing with clients and eliciting information from witnesses." No one on the Board objected to the recommendation; Schnabel's age was not discussed at the meeting.

On December 4, 1997, Abramson met with Schnabel and asked him to resign; Schnabel refused. The two men offer differing accounts of the meeting, with

dates who "did not work out."

Schnabel claiming in a letter written the next day that Abramson

> without notice or warning, attempted to coerce me by demanding that I resign my position as investigator so that he could hire a young man who had resigned over three years ago, prior to my hiring, and who wished to be re-hired. I refused and informed Mr. Abramson that his act was illegal and could subject both him and ⌊Legal Aid] to liability. Mr. Abramson candidly acknowledged that his act constituted a primae [*sic*] facie age discrimination case, that he had no complaints about my work, but wanted to re-hire the young man and would compose a letter claiming that I was fired for cause and place it in my file, if I refused to resign.

Abramson sent a letter to Schnabel the next day in which Abramson noted that he was "rehiring [Schnabel's] predecessor whose work was far superior." Abramson explained that he had written an accompanying memorandum setting forth the reasons for the decision only because Schnabel "want[ed] an explanation," and added that he "would have preferred for you to have resigned, as I asked. I would not have chosen writing derisively to or about you.... Instead, your reaction to my request was to consider immediately how you might profit from suing."

In the accompanying memorandum sent to Schnabel, Abramson offered the purported reasons why he decided to fire Schnabel. Specifically, Abramson cited: (1) Schnabel's "fundamental disdain" for Legal Aid clients, due to his "lengthy experience as a police chief" in Rocky Hill, Connecticut, which manifested itself in Schnabel's "preference, despite our insisting otherwise, that you deal with [clients] and witnesses by phone rather than face to face"; (2) Schnabel's "difficulty following instruction," notably his taking leave without approval and his failure to search in person for a requested business registration document, after which an attorney had to conduct the search himself; (3) Schna-

bel's exercise of "horrendous" judgment in "turn[ing] over a tape and a statement obtained from a client to an assistant District Attorney who asked you for them. That material and your grand jury testimony about obtaining it were used to indict the woman we represent for perjury"; and (4) Schnabel's "inept[ ]" performance, including his service of court papers by fax despite an instruction to serve personally, a misstep that led to an (ultimately unsuccessful) motion to dismiss the relevant action for improper service.

Schnabel filed a complaint initiating this action on February 26, 1998, asserting a claim against Legal Aid under § 1983 and a claim against both Legal Aid and Abramson under the ADEA. Following discovery, defendants moved for summary judgment pursuant to FED. R. CIV. P. 56. After the parties had briefed and argued the motion, the District Court granted it orally immediately after argument. The judgment dismissing the action was entered on November 8, 1999, and this appeal followed. We review *de novo* the District Court's decision, applying the same standards as did the District Court. *See, e.g., Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir.2000). For the reasons stated below, we affirm.

## DISCUSSION

### I. The § 1983 Claim

■ The District Court's decision was based on *Lefcourt v. Legal Aid Society,* 445 F.2d 1150 (2d Cir.1971), and *Graseck v. Mauceri,* 582 F.2d 203 (2d Cir.1978), in which we held that the dismissal of a staff attorney by the Legal Aid Society of New York did not constitute state action. Plaintiff cannot and does not attempt to distinguish *Lefcourt* and *Graseck;* instead, plaintiff argues that the Supreme Court's subsequent decisions in *Lebron v. National Railroad Passenger Corporation,* 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (concluding that Amtrak is a state actor), and *Branti v. Finkel,* 445 U.S. 507,

100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (implicitly finding that a public defender is a state actor when making hiring and firing decisions on behalf of the state), place the continued vitality of *Lefcourt* and *Graseck* in substantial doubt. Our decisions in *Lefcourt* and *Graseck* relied in significant part on the "lack of governmental control over or interference with" legal aid societies' affairs "notwithstanding the receipt of substantial government funds" by the societies, *Graseck*, 582 F.2d at 208; neither of the intervening Supreme Court decisions cited by plaintiff even implies that this is no longer a legitimate factor to consider. We therefore reaffirm the validity of our conclusion in *Lefcourt* and *Graseck* that a legal aid society ordinarily is not a state actor amenable to suit under § 1983. Accordingly, we affirm the District Court's dismissal of the § 1983 claim in this matter.

## II. The ADEA Claim

■ We have explained that we analyze ADEA claims "under the same framework as claims brought pursuant to Title VII." *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994). First, a plaintiff must establish a prima facie case of age discrimination. *See id.* Once the plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. *See id.* If the employer articulates such a reason, the plaintiff has the burden of proving that his age was the real reason for his discharge. *See id.*

### A. *A Prima Facie Case?*

■ Despite defendants' protests to the contrary, we conclude that plaintiff has established a prima facie case of age discrimination. We have stated that "[i]n order to establish a prima facie case of age discrimination under the standard enunci-

ated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Id.* (internal quotation marks and parallel citations omitted). Furthermore, "[t]he burden of proof that must be met to establish a prima facie case is minimal." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 199 (2d Cir. 1999).

■ Plaintiff has met this minimal burden. First, plaintiff was over sixty years old when he was fired, and thus fell within the protected age group. *See* 29 U.S.C. § 631(a). Second, plaintiff had extensive law enforcement experience. He was a police officer for the State and then City of New York for a total of nineteen years, then served as a police chief in four different locales between 1978 and 1993, before being admitted to the New York Bar. A jury easily could conclude that as an attorney with a law enforcement background, plaintiff was qualified to serve as an investigator for Legal Aid. Third, plaintiff was discharged in December 1997. Finally, the fact that he was replaced by a 31–year–old is sufficient to give rise to the inference that he was the victim of discrimination. *See, e.g., Tarshis v. Riese Org.*, 211 F.3d 30, 38 (2d Cir.2000). He thus has put forth the minimal proof necessary to establish a prima facie case of age discrimination.

### B. *Legitimate Reasons for Discharge?*

■ Defendants, in turn, have satisfied their burden under *McDonnell Douglas* of articulating legitimate, nondiscriminatory business reasons why Schnabel was discharged.[2] These reasons, explained at

---

2. We note that while *McDonnell Douglas* provides a useful analytical framework, the Supreme Court reiterated in *Reeves* that "[a]lthough intermediate evidentiary burdens shift

back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with

length in Abramson's memorandum of December 6, 1997 (*ante* at 86), include: plaintiff's asserted contempt for Legal Aid clients, difficulty following instruction, "outright insubordination," and "inept[ ]" performance. Defendants thus have articulated "clear and specific" reasons for Schnabel's firing, supported by evidence " 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.' " *Carlton,* 202 F.3d at 136 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)(emphasis omitted)).

### C. *Proof That Age was the Real Reason for the Discharge?*

█ Because defendants have articulated legitimate, nondiscriminatory reasons for having fired plaintiff, the burden shifts back to plaintiff to "present[ ] sufficient evidence for a reasonable jury to conclude that [defendants] discriminated against him because of his age." *Hollander,* 172 F.3d at 200. He attempts to do so by showing that defendants' stated reasons for discharging him were pretextual. His chief evidence on point is his own letter to Abramson dated December 5, 1997, in which he claimed to recount Abramson's

comments of a day earlier. In the letter, Schnabel asserted that Abramson had admitted that he "had no complaints" about Schnabel's work, and that Abramson had said he was prepared to "compose a letter claiming that [Schnabel] was fired for cause and place it in [his] file, if [he] refused to resign." A jury accepting that Schnabel's letter accurately reflected Abramson's comments could conclude that defendants' stated reasons for firing plaintiff were pretextual.[3]

Nevertheless, plaintiff has not demonstrated that the asserted pretextual reasons were intended to mask age discrimination. In fact, beyond the minimal proof required to state a prima facie case, Schnabel has offered *no* evidence that he was discriminated against *because of his age.*[4] Prior to *Reeves,* the District Court's decision to grant summary judgment in favor of defendants on the ADEA claim unquestionably would have been correct. We had stated that

[i]n an employment discrimination case, to defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for dis-

the plaintiff." *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2106 (internal quotation marks omitted).

3. Plaintiff attempts to buttress his pretext argument by explaining that the instances of insubordination and ineptitude to which Abramson referred in his memorandum were not as bad as Abramson claimed. For instance, plaintiff contends it was "routine" to check for documents by phone, and that the attorney in the matter cited by Abramson never complained about having to find the document himself. Next, plaintiff asserts that while it is true that *someone* was indicted after he voluntarily turned certain materials over to the District Attorney's office, the person indicted was *not* a Legal Aid client, as Abramson claimed, but rather merely a witness, and that the material plaintiff produced exculpated a Legal Aid client. Plaintiff also asserts that in connection with another instance to which Abramson referred, plaintiff effected service by fax rather than in person

because he had been instructed by a court clerk that service by facsimile was acceptable. He further notes that the case at issue ultimately was adjudicated on the merits. Whatever the merit of these contentions, we conclude that in light of the contemporaneous evidence that Abramson had said that he would "make something up" to justify firing plaintiff, a jury could indeed credit plaintiff's account and conclude that the stated reasons for discharging plaintiff were a pretext.

4. Although plaintiff points to the deposition testimony of a co-worker who recalled that Abramson had described plaintiff as "an older guy," the testimony is not probative of the relevant issue—whether defendants discharged plaintiff because of his age—because Abramson allegedly made the statement prior to plaintiff's commencing work at Legal Aid in 1994. Therefore, the statement sheds no light on why, over three years later, defendants decided to fire plaintiff.

charge is false or unworthy of belief *and* (2) more likely than not the employee's age was the real reason for the discharge.

*Woroski,* 31 F.3d at 108–09 (emphasis added) (citing *St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct. 2742); *see also Hollander,* 172 F.3d at 200 (stating that "to survive summary judgment [plaintiff] had to show not only pretext, but also *either use of a pretext that itself implies a discriminatory stereotype, or use of a pretext to hide age discrimination* " (emphasis in original)); *Fisher v. Vassar College,* 114 F.3d 1332, 1338 (2d Cir.1997) (*in banc* ) (explaining that "the fact that the proffered reason was false does not necessarily mean that the true motive was the illegal one argued by the plaintiff"). To the extent that *Woroski, Hollander,* and *Fisher* require a plaintiff, in some cases, to do more than establish a prima facie case and present pretext evidence in order to survive a motion for summary judgment, we must decide whether those cases are still good law in the wake of the Supreme Court's decision in *Reeves.*

■ In *Reeves,* a unanimous Court reversed the Fifth Circuit's decision to overturn a plaintiff's verdict on an ADEA claim. We note at the outset that it is immaterial that *Reeves* involved a postverdict motion for judgment as a matter of law—as opposed to a motion for summary judgment, as in the case at bar—because the "same standard that applies to a pretrial motion for summary judgment . . . also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50." *Alfaro v. Wal–Mart Stores, Inc.,* 210 F.3d 111, 114 (2d Cir. 2000) (internal quotation marks omitted). Thus, *Reeves* applies with equal force on a motion for summary judgment. The Su-

preme Court stated at the outset of its opinion that it sought to decide "whether a defendant is entitled to judgment as a matter of law when the plaintiff's case consists *exclusively* of a prima facie case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action." *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2103 (emphasis added). Because it is clear that the Court's answer to this question cannot be reduced to a simple "Yes" or "No," we must carefully examine the opinion to determine whether it mandates that we vacate the District Court's decision to grant defendants' motion for summary judgment on the ADEA claim.

■ The Supreme Court began in *Reeves* by noting that there existed a conflict among the Courts of Appeals concerning the question at issue, citing our *in banc* decision in *Fisher* as one of a number of cases requiring a plaintiff to present more than just prima facie and pretext evidence to succeed on a discrimination claim. *See id.* at —— – ——, 120 S.Ct. at 2104–05.[5] The Court then explained:

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *In appropriate circumstances,* the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence

**5.** It is arguable that the Supreme Court's reading of *Fisher* was inaccurate. We read *Fisher* as consonant with *Reeves:* Both hold that the quantum of evidence needed to sustain an inference of discrimination is the same as that needed to sustain the ultimate inference in any other civil case. In any

event, any possible disagreement about whether *Fisher* imposed a *per se* rule requiring in all instances that an ADEA claimant offer more than a prima facie case and evidence of pretext, is rendered moot by *Reeves,* which now becomes our principal guide on these questions.

to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated.

*Id.* at ——————, 120 S.Ct. at 2108–09 (emphases added) (internal citations and quotation marks omitted). We note that the Court did not categorically conclude that a prima facie case plus pretext evidence "permits" a trier of fact to find that a plaintiff has satisfied his ultimate burden; it noted, instead, that such circumstances "*may* permit" a trier of fact to conclude that a plaintiff had met his ultimate burden. If *Reeves* had ended here, we would have little choice but to reinstate plaintiff's ADEA claim in the instant case.

However, the Court continued:

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review ..., and we have reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact.

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that

supports the employer's case and that properly may be considered on a motion for judgment as a matter of law. For purposes of this case, we need not—and could not—resolve all of the circumstances in which such factors would entitle an employer to judgment as a matter of law. It suffices to say that, because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must *always* introduce additional, independent evidence of discrimination.

*Id.* at ——, 120 S.Ct. at 2109 (emphases added) (internal citations and quotation marks omitted). We interpret this language to limit substantially the reach of the portion of the opinion that directly precedes it, particularly in conjunction with the limiting language the Court placed within that paragraph itself, as discussed *ante* at 89.

 In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a *per se* rule requiring *in all instances* that an ADEA claimant offer more than a prima facie case and evidence of pretext. Thus, to the extent that *Woroski* and *Hollander* imposed such a rule, *see ante* at 88, they no longer may be followed. But the converse is not true; following *Reeves,* we decline to hold that *no* ADEA defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2106 (internal quotation marks omitted); *see also Vadie v. Mississippi State Univ.,* 218 F.3d 365, 374 n. 23 (5th Cir.2000) (concluding after *Reeves* that a prima facie case plus

pretext evidence may be enough to permit a finding of discrimination, but will not always be sufficient, with the ultimate issue remaining whether the evidence in the record as a whole "creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains"). Accordingly, summary judgment might still be appropriate in this matter.

We hold that summary judgment was appropriate in the case at bar, for plaintiff has presented no evidence upon which a reasonable trier of fact could base the conclusion that age was a determinative factor in defendants' decision to fire him. In so holding, we note that plaintiff's case is far weaker than was Reeves's. First, plaintiff does not contend that his age was discussed by Abramson and the Board in the deliberations over Abramson's desire to re-hire Sherlock, or even by Abramson in explaining the decision to Schnabel. Second, plaintiff has failed to offer any evidence that he was subjected to any age-related comments or criticisms on the job. Reeves, by contrast, was told by his supervisor that "he was so old [he] must have come over on the Mayflower" and that he "was too damn old to do [his] job." *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2110. Third, Schnabel was fired by the same man who had hired him three years earlier, when Schnabel already was 60 years old.[6] In the past, we have found this factor highly relevant, stating that "some factors strongly suggest that invidious discrimination was unlikely. For example, where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997). We conclude that this remains a highly relevant factor in adjudicating a motion for summary

judgment on an ADEA claim. Finally, the decision to fire Schnabel was not made in a vacuum; rather, he was replaced by the person whom he originally had replaced. Defendants explicitly compared the performances of the two men, and found that Sherlock was a better investigator than Schnabel. For all these reasons, plaintiff's case is far weaker than was Reeves's.[7]

Because plaintiff has presented no evidence from which the inference could be drawn that he was discriminated against on the basis of age, he cannot meet what the *Reeves* Court reaffirmed was his "ultimate burden," *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2106 (internal quotation marks omitted), and summary judgment in favor of defendants was warranted.

### *CONCLUSION*

We affirm the judgment of the District Court granting defendants' motion for summary judgment. We conclude that: (1) there is no reason to disturb our previous conclusion that the Legal Aid Society is not a state actor amenable to suit under § 1983; and (2) plaintiff's ADEA claim properly was dismissed because no reasonable jury could conclude that he had presented evidence sufficient to support his claim that age-based discrimination was a determinative factor in defendants' decision to fire him. Specifically, we hold that after *Reeves*, a court may, in appropriate circumstances, still grant a defendant's motion for summary judgment—or judgment as a matter of law—on an ADEA claim when a plaintiff has offered only a prima facie case along with evidence that the defendant's stated nondiscriminatory reasons for an adverse employment action are pretextual.

---

6. Reeves, by contrast, "had spent 40 years in the employ of [the] respondent." *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2103.

7. We undertake the comparison not to suggest that the facts in *Reeves* establish any threshold level of evidence of discrimination,

beneath which judgment as a matter of law is mandated, but because we find *Reeves* instructive in undertaking an analysis of the "number of factors" identified by the Supreme Court. *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2109.