**Howard E. GOLOVE, Plaintiff–
Appellant,**

v.

**MONROE COMMUNITY COLLEGE,
Defendant–Appellee.**

**Docket No. 01–7594.**

United States Court of Appeals,
Second Circuit.

Feb. 19, 2002.

Donna Marianetti, Rochester, NY, for Appellant.

Timothy M. Lexvold, Rochester, NY, for Appellee.

Present POOLER, SOTOMAYOR, Circuit Judges, GARAUFIS, District Judge.*

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

Howard E. Golove worked for Monroe Community College ("Monroe") from September 7, 1986, through August 31, 1998. From 1986 through 1993, Golove directed a grant funded program known as the Purchase Assistance Comprehensive Employment Program ("PACE"). The purpose of this program was to enable individuals receiving public assistance to become self sufficient through education and employment. In 1993, the program, now funded by Monroe County, changed its name to Temporary Assistance for Student Careers ("TASC"). Its focus also changed slightly from education to job placement. At the end of each grant period, Golove received recommendations from his immediate supervisor and from a Monroe vice president, Thomas Flynn, for reappointment for the next grant period. In 1996, Monroe appointed Golove to his last term as the TASC director; at that time, Monroe was 54 years old.

In 1996, Monroe redesigned its TASC program to meet the requirements of the Welfare Reform Act. College administrators decided that no-one employed by the

---

* The Honorable Nicholas G. Garaufis, United States District Court Judge for the Eastern District of New York, sitting by designation.

TASC would automatically receive a job with the newly created Work and Learn Center. However, after an interview process, Monroe hired most current TASC employees for the Work and Learn Center. Flynn appointed a search committee consisting of Susan Salvador, associate vice president for student services and Golove's immediate supervisor, Patricia Kennedy, director of student support services, Kathy Affleck, project director for Monroe's Dislocated Workers' Career Center, Quintin Bullock, executive director of one of Monroe's campuses and affirmative action officer, and Gregory Soehner, chair of the committee and director of grants, to recommend candidates for the director position.

The Search Committee reviewed all resumes and selected six for interviews. Of the six candidates selected, four were men and two women. After the interviews, the committee forwarded the name of the two women—Margaret Van Kirk and Sylvia Paul—to Flynn for a final determination. Flynn chose Van Kirk, who since 1995 had been the project director for Monroe's Skills, Training, Academics, Growth, Employment or "STAGE" program. Between 1994 and 1995, Van Kirk was STAGE's acting director, and from 1987 to1994, she worked for Monroe as a project coordinator involved in job placement and as a lecturer. At the time of Van Kirk's appointment, she was 47 and Golove was 55. Van Kirk held a master's degree in education with an emphasis in college counseling, and Golove had a master's degree in communications. Both also had worked for entities other than Monroe. Golove had worked in a variety of instructional, specialist, and managerial positions for the Rochester Institute of Technology, Eastman Kodak Company, and Xerox Corporation, while Van Kirk taught in public and parochial schools for eleven years.

Although Golove was not hired to head the Work and Learn Center, he did receive a short term appointment as a workforce development analyst and therefore remained at Monroe through August 1998.

During his time at Monroe, Golove received evaluations from three different supervisors: Patricia Stevens, Ed Phoenix, and Salvador. Each of Golove's evaluations gave him an overall score of "effective and competent," the middle category among five categories ranging from unsatisfactory to exceptionally effective. Although the evaluators rated Golove highly in certain categories, they very often noted problems with his management of staff and sometimes described difficulties he had in relationships with students.

On April 16, 1999, plaintiff filed a lawsuit charging that Monroe's failure to appoint him as the director of the Work and Learn Center violated Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, and New York's Human Rights Law, New York Executive Law § 290 *et. seq.* Monroe defended its hiring process, claiming that the screening committee believed Van Kirk and Paul to be the most qualified applicants, the Work and Learning Center had a different focus than the TASC, and the committee heard from Salvador and Affleck that Golove lacked ability as a supervisor.

After discovery, Monroe moved for summary judgment. On May 3, 2001, the district court granted this motion, finding that (1) Golove established a *prima facie* case of both sex and age discrimination; (2) Monroe articulated a legitimate business justification; and (3) Golove failed to create an issue of fact on the legitimacy of the asserted reason or discriminatory animus.

On appeal, neither party questions the district court's resolution of the first two

issues, but Golove contends that he offered enough competent evidence to create an issue of fact on both pretext and discrimination. With respect to his age discrimination claim, he relies on (1) his "stellar" performance as the director of the programs that preceded the Work and Learning Center; (2) the failure of Monroe to discipline him or deny him reappointment based on negative comments about his supervisory skills; (3) his significantly longer experience than Van Kirk, as the director of a grant-funded program, than Van Kirk; (4) the failure of Van Kirk to achieve program goals for the Work and Learn Center after she became its director in contrast to his record of meeting or exceeding goals in all years; (5) the destruction of committee notes and application materials by committee members; (6) the fact that although consideration of resumes was theoretically blind, committee members may have known the identity of the candidates they were discussing; (7) failure by one committee member to remember any discussion of Golove's allegedly deficient managerial skills; and (8) age related comments that Flynn made to Golove. In addition to his claims concerning relative qualifications and the committee's process, Golove claims as evidence of gender discrimination: (1) Monroe's failure to hire him and hiring of less qualified females for other positions and (2) the employment of only two men and nineteen women in the Work and Learn Center.

■ The third step in resolving a summary judgment motion on an employment discrimination claim requires the court to determine whether the plaintiff has offered "sufficient evidence for a reasonable jury to conclude that [defendants] discriminated against" the plaintiff. *Schnabel v. Abramson,* 232 F.3d 83, 88 (2d Cir.2000) (internal quotation marks omitted). Proof of the falsity of an employer's

explanation may sometimes but will not always allow the jury to infer that the employer's true motive was discriminatory. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ We agree with the district court that Golove did not offer sufficient evidence to allow a reasonable trier of fact to find either pretext or discrimination. First, the record does not support Golove's claim that his performance was "stellar." Overall, the evaluations rate him as only average. While this performance may have been sufficient to support his reappointment as director of PACE and TASC, an average rating is not sufficient to create even a weak inference of discrimination with respect to Monroe's choice of another candidate as director of the Work and Learn Center. The same is true of Golove's reliance on Monroe's failure to discipline or fire him despite his weak performance as a manager of people. An employer is not required to formally discipline an employee in order to consider his lack of skill in a particular area as a factor in hiring for a new position. Next, although Golove clearly had more experience than Van Kirk as a program administrator, this fact does not create an inference of discrimination because Van Kirk had worked as a program director for three years, giving Monroe an ample opportunity to judge her abilities. *Cf. Byrnie v. Cromwell,* 243 F.3d 93, 103–04 (2d Cir.2001) (reversing grant of summary judgment where employee hired lacked announced educational requirements for position and had missing transcripts, and plaintiff was well qualified). Van Kirk's asserted failure to meet her program goals after hiring are also of no evidentiary value in light of the record's silence on whether those goals were similar to the goals for Golove's program and the fact

that this failure occurred after Monroe made its hiring decision. Two additional claims Golove makes can be dismissed summarily: he points to no other instances in which Monroe allegedly selected less qualified females over him for promotion and he makes no allegations suggesting that the hiring of nineteen women for the Work and Learn Center was discriminatory.

■ We turn next to Golove's allegations that Flynn made two remarks evincing a discriminatory animus on his part. The first occurred during a senior staff meeting that Golove attended although he was not a member of the senior staff. Flynn said something like:

> We're moving into a more high-demand position now with what's happening at the college, and some of you have been here a long time. You've worked very hard. You've distinguished yourselves. And if you do feel burned out, as a discussion I had with someone, you have other opportunities, and you should certainly ... if you don't think your horse can run this race, it would be a good time to step down and let someone else step back in and let someone else go to this position. And all of you can give thought to that.

In addition, Golove alleges that after he expressed to Flynn his shock at not being hired for the Work and Learn Center program, Flynn asked "What are you? 54? 55?" Golove's complaint described this incident somewhat differently; there Golove alleged that Flynn asked his age after offering Golove a temporary position and suggesting that he actively seek a new job. We reject Golove's contentions that the alleged remarks constitute sufficient evidence of discrimination for several reasons. First, neither remark clearly or even probably suggests an age-based animus on Flynn's part. Second, the first

remark was directed at senior managers who had tenure, suggesting that Flynn was telling them they had options rather than attempting to force them out. Third, Golove subtly altered the context of the second remark between his complaint and the affidavit he submitted in opposition to summary judgment to make it appear probative of age discrimination. Based on these combined circumstances, we find that these remarks are not sufficiently probative of a discriminatory animus on Monroe's part. Cf. *Woroski v. Nashua Corp.*, 31 F.3d 105, 109–10 (2d Cir.1994) (indicating that stray remarks—even by a decision maker—cannot alone prove workplace discrimination).

Finally, we consider Golove's objections to the search committee's process. His claim concerning committee members' knowledge of the identities of candidates whose resumes they screened does not support his discrimination claim because this allegedly defective process resulted in him being selected for an interview. Golove also claims that the committee members contradicted each other concerning consideration of his poor staff management during the search process. Some three years after the committee made its selections, Salvador testified that both she and another committee member brought up Golove's supervision problems. Bullock could not recall any discussion of Golove or of his interactions with his staff. However, Soehner, the committee chair, testified that both Salvador and Affleck had concerns about Golove's supervisory skills. In sum, Soehner's and Salvador's reflections are completely consistent, and Bullock, three years after the fact, simply could not recall the discussion. These accounts are not contradictory.