**Roland COCKFIELD**

v.

**UNITED TECHNOLOGIES CORP.,
Pratt & Whitney Division**

**No. 3:00CV564(JBA).**

United States District Court,
D. Connecticut.

Oct. 7, 2003.

Charles G. Parks, Jr., Parks & Associates, Stamford, CT, for plaintiff.

Meredith G. Diette, Brown Jacobson, Norwich, CT, Kurosh L. Marjani, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, Daniel Adam Schwartz, Albert Zakarian, Day, Berry & Howard-Htfd-CT, Hartford, CT, for defendant.

*Ruling on Defendant's Motion for Summary Judgment [Doc. # 89] and Defendant's Motion to Strike [Doc. # 97]*

ARTERTON, District Judge.

Plaintiff Roland Cockfield, formerly employed as a Senior Plant Protection officer by defendant United Technologies Corp., Pratt & Whitney Division ("Pratt"), brings this suit alleging that Pratt terminated him on account of his race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Defendant now moves for summary judgment, arguing that plaintiff can neither establish a *prima facie* case nor demonstrate that Pratt's reasons for discharging him were a pretext for race discrimination. For the reasons set forth below, defendant's motion [Doc. # 89] is DENIED.

## I. Factual Background [1]

On June 28, 1991, Pratt terminated Cockfield's 26.5 year employment for accepting free food allegedly in violation of Pratt's Conflicts of Interest policy. His personnel record reflects he was terminated for "theft." At the time of his termination, Cockfield was the only African American working as a Senior Plant Protection officer at Pratt's Middletown, Connecticut facility.

The road leading to Cockfield's termination began in mid-June 1991, when Pratt received an anonymous tip that Cockfield was receiving free food from Cafeteria No. 10, which was run by ARA Services, an independent supplier. Defendant launched an investigation and on June 26, 1991 two of defendant's internal security officers, Robert Begley and William J. Phelps, observed a transaction evidencing Cockfield accepting food without paying for it. The two officers saw Cockfield select a large hot dog and a water, saw him proceed to the ARA Services cashier Edith Wiknik and give her a five-dollar bill, and saw Wiknik return five singles to him. As Cockfield left the cafeteria after lunch, the officers confronted him and Cockfield admitted that he had not paid for the food and that he had been accept-

---

1. This rendition of facts is one which draws all factual inferences in favor of plaintiff, the non-moving party as is required under Fed. R.Civ.P. 56. It does not constitute any finding of fact.

ing free or reduced-price food from Wiknik for approximately six months.

In his deposition, Cockfield explained his relationship with Wiknik, who suffered from liver cancer. According to Cockfield, she regularly provided him with free or reduced-price meals as a demonstration of her gratitude for Cockfield's efforts to help secure a handicap parking permit and for his having assisted her when she needed to lift heavy objects.[2] Initially, when Cockfield ordered food, Wiknik would accept no money from him, but later would pay for his meals out of her own pocket to prevent the register from being short of money. Cockfield assumed Wiknik was paying for the meals because he observed her write something down each time he accepted free food. After an employee complained to Wiknik about Cockfield's receipt of free food, the procedure changed. Cockfield would give Wiknik one bill and she would return the same amount in different denominations presumably to provide the appearance of a bona fide transaction.

The record reveals, however, that Cockfield was not the only Pratt employee who received free or reduced price food. The affidavits of two of Cockfield's co-workers, Robert Graves and Billy Mitchell, state that other Plant Protection Officers received reduced-price and/or free food, but that, to their knowledge, Cockfield was the only employee ever terminated for receiving the same. Graves also reports that there existed a "special relationship" between cafeteria personnel and Plant Protection officers, whereby guards would give money to the cashier for food and the cashier would set the price of food by deciding how much change to give back.[3] *See* Pl.'s Ex. 25. Graves and Mitchell further state that a white employee was terminated for allegedly stealing food from the cafeteria, but was later reinstated through the grievance process. In his deposition, plaintiff testified he had not known that his conduct violated company policy, that he had never been previously warned or reprimanded for it, that others had engaged in this practice without consequence, and that the 1990 company policy permitted receipt of such small gratuities.

As part of the inquiry into Cockfield's receipt of free food, Pratt employee William Schiffert provided a written statement to investigator Robert Begley, which included representations that he had earlier complained to Edith Wiknik in 1987 both about John Gustaitus, another Pratt

2. Wiknik died several years ago. Her statement during defendant's investigation of plaintiff generally corroborates plaintiff's deposition testimony.

3. The fact that Graves' statements about a "special relationship" are contained in an undated but signed letter, appearing to have been submitted in either unemployment or CHRO proceedings, does not preclude the Court from considering this evidence at the summary judgment stage. "We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The context of the Supreme Court's statement in *Celotex* makes clear that, in addition to not having to depose its own witnesses, a non-moving party could meet its rebuttal burden with evidentiary materials both not specifically identified in Fed.R.Civ.P. 56 and not currently in admissible form. *See id.; see also* 10A Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2722, at 360–61 (1998 & Supp. 2003) ("Federal Practice") ("The court and the parties have great flexibility with regard to the evidence that may be used on a Rule 56 proceeding.... [T]he particular forms of evidence mentioned in the rule are not the exclusive means of presenting evidence on a Rule 56 motion."). At trial Graves can be called to testify about this "special relationship," with this letter used to refresh recollection or to impeach if he gives inconsistent testimony.

employee receiving free food from her, and other employees taking doughnuts and coffee from the cafeteria without paying for them.

Pratt maintains that it fired Cockfield for misconduct under its 1986 Conflicts of Interest policy, which applied to all Pratt employees, and reads in pertinent part:

> "[N]o officer or employee shall seek or accept, directly or indirectly, any payments, loans, gifts, services, or any other form of compensation, benefit, or persuasion from suppliers, customers, or others doing business with or seeking to do business with the corporation."

Pl.'s Ex. 1 [Doc. # 93] at 1. However, that policy was supplemented in 1990, one year prior to the investigation of Cockfield, with a document entitled Re: Policy Concerning Conflicts of Interests, which included the following:

> "The Corporation rightfully expects the undivided loyalty of its employees, free from any of the compromising influence of others. Accordingly, employees of the corporation are not permitted to accept gifts from individuals, firms, or entities who have or seek business relationships with the corporation. It is, of course, a commonly accepted business practice to receive gratuities of nominal value (for example *meals,* entertainment, refreshments, advertising and promotional items). The Corporation allows the acceptance of such gratuities which are customary business courtesies and which are reasonable in frequency and value. While difficult to define a 'customary business courtesy' with specificity, a common sense determination must be made to refuse anything which could appear as intended to influence."

Pl.'s Ex. 16 [Doc. # 93] at 2 (emphasis added).

On June 26, 1991, Cockfield's supervisor Fred Jones informed Cockfield that "up-per management" had suspended him indefinitely, remarking, " . . . you know you've been watched under a microscope. You shouldn't have got yourself in this position." On June 28, 1991, Cockfield was terminated.

## II.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. Pro. 56(c). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060–61 (2d Cir.1995) (citations omitted).

## III.  Title VII Analysis of Race Discrimination Claim

■ Title VII race discrimination cases are analyzed under the familiar *McDonnell Douglas / Burdine* burden-shifting framework. First the plaintiff must establish a *prima facie* case of discriminatory discharge on account of race. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2nd Cir.2000). If the plaintiff meets this requirement, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's termination. *See id.* "For the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination.

The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Id.* (quotation omitted).

## A. *Prima Facie* Case

■ "To meet the burden of production required for a *prima facie* case of discrimination, a plaintiff must show that he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of membership in the protected class." *Graham v. Long Island Rail Road,* 230 F.3d 34, 38 (2d Cir.2000).

■ To prove the fourth element, "[a] plaintiff may raise [ ] an inference [of discrimination] by showing that the employer . . . treated him less favorably than a similarly situated employee outside his protected group." *Id.* at 38. The comparable employees must be similarly situated "in all material respects," which means that "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards . . . [and] that similarly situated employees who went undisciplined engaged in comparable conduct." *Id.* at 40 (internal quotations and citations omitted). "[A] company-wide policy uniformly applicable to all members of a group may be a basis for comparing employees, regardless of particular job being performed," *id.* at 42, and "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.* at 39. Finally, "[w]hether two employees

are similarly situated ordinarily presents a fact question for the jury." *Id.* at 38.

The parties do not dispute that Cockfield makes out the first three elements of a *prima facie* case. He is an African American, had been employed for almost twenty seven-years at the time of his termination and was rated at least fully competent in all fourteen categories of his last performance review, and he was discharged. Defendant claims, however, that the record evidence cannot create a triable issue on the fourth element because there is no evidence that any similarly situated non-black security officers engaged in comparable conduct without suffering corresponding discipline. After review of the record, the Court concludes that plaintiff has shown evidence sufficient to satisfy his *prima facie* burden.

■ From the affidavit and letter of Robert Graves, the affidavit of Billy Mitchell, and the report of William Schiffert, a fact finder could conclude that Pratt knew that there had been a pervasive practice of its employees receiving free or discounted food, but the drastic disciplinary step of terminating an employee was never used before. Although some of these employees may not have been employed as plant protection officers, Pratt's company-wide 1986 Conflicts of Interest Policy applied regardless of position. Schiffert's report specifically references the case of John Gustaites, a salaried employee known to have accepted free food from ARA Services personnel, who was not terminated or disciplined. If Graves' recollection is credited that Pratt first fired but then reinstated a white employee who stole food from the cafeteria, stealing being conduct at least as culpable as receiving free food from a consenting donor, but denied Cockfield any consideration for reinstatement, this disparate treatment may evidence an intent to discriminate.

In sum, from this evidence, a trier of fact[4] could determine that Pratt knew that similarly situated non-black employees had engaged in the same conduct for which Cockfield was summarily terminated, but they suffered no discipline. Even if some of the Pratt employees who had received free food but were not disciplined were black, that fact could not, as a matter of law, negate the inference of racial discrimination arising from the record evidence because "discrimination against one employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees of the same race or sex." *Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir.2001).

## B. Legitimate Reason for Discharge

■ Because Cockfield has established a *prima facie* case, "[t]he burden therefore shift[s] to [defendant] to produce evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citations, quotations, and alterations omitted), and is satisfied if the proffered evidence " 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.' " *Schnabel v. Abramson,* 232 F.3d 83, 88 (2d Cir.2000) (*quoting St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■ Defendant's termination letter states plaintiff was fired "due to violations of Company rules," *see* Def.'s Ex. K [Doc. # 91], which its briefing explains referred to Pratt's Conflicts of Interest Policy, in its

Supervisor's Policy Guide, issued 1/09/76 and revised 5/15/86:

> "[N]o officer or employee shall seek or accept, directly or indirectly, any payments, loans, gifts, services, or any other form of compensation, benefit, or persuasion from suppliers, customers, or others doing business with or seeking to do business with the corporation."

Def.'s Ex. F. [Doc. # 91] at 1. Even if this was the policy under which Cockfield was terminated, a December 1990 explanatory memorandum issued simultaneously with the Pratt Policy Concerning Conflicts of Interest, *see* Pls.' Exs. 16 and 17 [Doc. # 93], draws into question whether the terms of defendant's conflict of interest policy were applicable to Wiknik and Cockfield's exchanges. Under all of the circumstances, a fact finder could reasonably conclude that: Wiknik, a cafeteria cashier, while admittedly an employee of ARA and therefore its agent, provided Cockfield with free food in gratitude for his personal assistance to her and not to improperly seek favorable treatment for ARA, and therefore Wiknik was operating independently of her vendor employer and without its knowledge and, as such, was not a "supplier[ ], customer[ ], or other[ ] doing business with or seeking to do business with the corporation." The undisputed fact that Wiknik paid for any shortfall out of her own pocket supports both the inapplicability of the policy to this personal exchange, as well as disputes the personnel record of "theft" as the reason for discharge. Thus, defendant's proffer of the 1986 Conflicts of Interest Policy as the justification for Cockfield's termination does not compel the conclusion that Pratt's proffered reason was legitimate and nondiscriminatory.

---

4. This case will be tried to the bench as a consequence of the Court's granting Defendant's Motion to Strike Jury Trial Claim. *See* Doc. # 36.

## C. Evidence That Race was the Real Reason for Discharge

■ Assuming Pratt has articulated a race-neutral reason for plaintiff's termination, Cockfield must "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42. Cockfield may satisfy this burden with evidence sufficient to establish "... a *prima facie* case, combined with sufficient evidence to find the employer's asserted justification is false...." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *see also Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001) ("*Reeves* instructed that the combination of evidence establishing a *prima facie* case and evidence showing that a proffered explanation was pretextual is neither always to be deemed sufficient nor always to be deemed insufficient."). Even with such evidence, however, "an employer is [nonetheless] entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

Whether Cockfield could have been legitimately dismissed in June of 1991 under defendant's 1986 Conflicts of Interest Policy is disputed by the existence of Pratt's 1990 supplement to its Conflicts of Interest policy, which may not prohibit Cockfield's conduct as it specifically allows for receipt of small gratuities like meals: "It is, of course, a commonly accepted business practice to receive gratuities of nominal value (for example *meals*, entertainment, refreshments, advertising and promotional items)." Pl.'s Ex. 16 [Doc. # 93] at 2 (emphasis added). Further, Pratt's proffered reason for discharge—that the free food received by Cockfield violated the 1986 policy—necessarily requires accepting Pratt's view that Wiknik was a supplier who was seeking to do business with Pratt and potentially providing a benefit/gratuity to Cockfield to improperly influence him. A trier of fact could conclude that while Cockfield's conduct in 1991 was encompassed within the literal policy terms, under the circumstances, Pratt's purported reason for terminating Cockfield has no basis in its conflict of interest rationale. However, it might also contrarily conclude that Cockfield's repeated receipt of free food did violate the 1990 policy in that it was not a "customary business courtes[y] ... reasonable in frequency and value."

The evidence of record creates a genuine issue on the material fact of whether Pratt's stated reason for firing Cockfield was the real reason. In the absence of any other non-discriminatory reason for plaintiff's termination, neither of the two scenarios set forth by the Supreme Court in *Reeves* provides a basis for according summary judgment to defendant even if plaintiff's evidence is characterized as only having established a *prima facie* case plus falsity of employer reason for discharge. Furthermore, if Pratt's explanation is not worthy of credence, and plaintiff's evidence shows that similarly situated employees, including a white employee suffering no equivalently serious discipline while engaging in the same conduct of receiving free food, a trier of fact would have a sufficient basis to find that plaintiff's race was a motivating factor in Pratt's discharge decision.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment

[Doc. # 89] is DENIED. Defendant's Motion to Strike Exhibits 22, 23 and 26 [Doc. # 97] is DENIED as moot as they do not form the basis for the Court's decision.

IT IS SO ORDERED.