Quinn BOULEY, on her own behalf and as guardian ad litem for her minor children, Sage Harple and Eros Bouley–Swedo

v.

Jacqueline YOUNG–SABOURIN

No. Civ.1:03 CV 320.

United States District Court, D. Vermont.

March 10, 2005.

Meris Bergquist, Springfield, VT, for Plaintiffs.

Richard H. Wadhams, Jr., Pierson Wadhams Quinn Yates & Coffrin, Burlington, VT, for Defendant.

Emily J. Martin and Lenora M. Lapidus, ACLU Women's Rights Project, New York City, for amicus on behalf of Plaintiffs.

*RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT*

MURTHA, District Judge.

(Papers 46 and 61)

The plaintiff in this civil rights action claims the defendant evicted her from an apartment in violation of the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et seq.* Relying on deposition testimony and other portions of the undisputed record, both parties have moved for summary judgment. Because the Court finds the record contains material factual disputes, and for the reasons set forth below, the Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment are DENIED.

*Background*

On a motion for summary judgment, the moving party has the initial burden of informing the Court of the basis for the motion and identifying the absence of a genuine issue of material fact. *See, e.g., Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). Where, as here, cross motions for summary judgment are supported by affidavits and other documentary evidence, each party, in opposing the other's motion, must set forth specific facts showing there is a genuine, material issue for trial. *See Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 526 (2d Cir.1994). Only disputes over facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Upon review of the documentation in the record, and solely for the purpose of deciding the pending motions, the Court sets forth the following. On August 1, 2003, plaintiff Quinn Bouley, her husband, Daniel Swedo, and their two children, rented the apartment upstairs from defendant

Jacqueline Young–Sabourin. *See* Def.'s Statement of Undisputed Facts (Paper 47) at Ex. A. The apartment is located at 63–65 Fairfield Street, St. Albans, Vermont. From August 1, 2003 through October 15, 2003, the plaintiff received no complaints from the defendant related to her tenancy and, in fact, had very little personal contact with the defendant.

On October 15, 2003, at approximately 8:00 p.m., the plaintiff's husband, Daniel Swedo, criminally attacked her. The plaintiff called the police and fled the apartment. St. Albans police arrested her husband and, that night, the plaintiff applied for a restraining order. *See* Pl.'s Statement of Undisputed Facts (Paper 63) at paras. 15–19. Swedo eventually pled guilty to several criminal charges related to the incident, including assault.

On the morning of October 18, 2003, the defendant visited the plaintiff's apartment. The plaintiff and defendant dispute the particulars of their conversation; the plaintiff has characterized the discussion as one in which the defendant attempted unsuccessfully to discuss "religion" and "Christianity" with her before declaring "I guess I can't do anything here" and leaving. *See* Paper 63 at 44. Later that day, the defendant wrote the following letter, in which she asked the plaintiff to leave the premises by November 30, 2003:

Dear Quinn,

The purpose of my visit this morning was to try and work things out between you, your agreement in your lease, and the other tenants in the building. I felt very disappointed in the fact that you started to holler and scream, and threaten me, in my efforts to help you. This could only lead me to believe that the violence that has been happening in your unit would continue and that I must give you a 30 day notice to leave the premises.

Agreement # 10 on your lease states that "Tenant will not use or allow said premises or any part thereof to be used for unlawful purposes, in any noisy, boisterous or any other manner offensive to any other occupant of the building." Other tenants, and now myself included, feel fearful of the violent behaviors expressed.

Other issues of the lease have not been kept. I see this as minor and again was in hopes to [sic] work them out with you. # 7 No storage shall be kept outside the building or on porches and, in the body of the lease itself, "Tenant shall pay Jacqueline L. Young–Sabourin or her authorized agents John and Windee Young or Katherine Duggan on the 1st day of the month."

Although I did not see the holes in the wall, several sources have told me that holes have been punched in the walls in the unit. In addition, I gave you permission to repaper the wall in the living room or paint it as you did not like the paper. At this time half of the layers of old paper have been peeled off and the walls are left in bad condition.

I would like to remind you that you signed an Apartment inspection sheet at the time of your rental, and I expect the apartment to be in the same condition when you move out. Daniel has stated that he will work in the apartment after you have moved.

Your 30 day notice will mean that you should leave the premises by November 30, 2003. As stated in your lease, your last months [sic] rent is not covered by your deposit. Cooperation between myself and my tenants would be appreciated up to that time, and repair to the apartment.

Paper 47 at Ex. B.

### Discussion

The Fair Housing Act makes it unlawful, *inter alia*, "[t]o refuse to sell or rent after

the making of a bona fide offer, or to otherwise refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The plaintiff alleges the defendant unlawfully terminated her lease on the basis of sex and religion. First, she claims the termination was initiated because she was a victim of domestic violence, and second, because she refused to listen to the defendant's attempt to discuss religion with her after the incident. These claims, if proven, could constitute unlawful discrimination under the Fair Housing Act. *Cf. Smith v. City of Elyria*, 857 F.Supp. 1203, 1212 (N.D.Ohio 1994) (In a civil rights suit commenced against police department, the court states: "There is evidence in the record from which a jury could find the defendants' domestic disputes policy had a discriminatory impact and was motivated by intent to discriminate against women.").

■ Claims of housing discrimination are evaluated using the *McDonnell Douglas* burden-shifting framework. *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir.2003). "Accordingly, once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision.... If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action.... Summary judgment is appropriate [only] if no reasonable jury could find that the defendant's actions were motivated by discrimination." *Id.* (citations omitted).

■ The plaintiff has demonstrated a prima facie case. It is undisputed that, less than 72 hours after the plaintiff's husband assaulted her, the defendant attempted to evict her. In addition, the record contains evidence which suggests the eviction also may have been prompted by the plaintiff's refusal to discuss religion with the defendant. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995) ("As this was the first mention of a termination date, the timing of Snook's letter supports an inference of discrimination sufficient to establish a prima facie case.").

■ In response, the defendant has presented little evidence of preexisting problems with the plaintiff, as a tenant. In addition, the timing of the eviction, as well as reasonable inferences which a jury could draw from some of the statements in the eviction letter, could lead a reasonable jury to conclude that the real reason for the defendant's actions was unlawful discrimination. *See, e.g., Schnabel v. Abramson*, 232 F.3d 83, 89 (2d Cir.2000) ("the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose").

The Cross Motions for Summary Judgment are DENIED. The Clerk is instructed to place this case on the next jury trial calendar.

SO ORDERED.