**Donald GALLO, Plaintiff,**

v.

**The SECOND TAXING DISTRICT OF the CITY OF NORWALK OPERATING UNDER THE NAME OF SOUTH NORWALK ELECTRIC AND WATER, Defendant.**

No. 3:06CV242 (DJS).

United States District Court, D. Connecticut.

Aug. 28, 2007.

---

Thomas W. Bucci, Willinger, Willinger & Bucci, Bridgeport, CT, for Plaintiff.

Barbara L. Coughlan, Frank W. Murphy, Tierney, Zullo, Flaherty & Murphy, Norwalk, CT, for Defendant.

### *MEMORANDUM OF DECISION*

DOMINIC J. SQUATRITO, District Judge.

On February 16, 2006, plaintiff Donald Gallo ("Gallo" or "the Plaintiff") filed this action alleging that his employer, South Norwalk Electric and Water ("SNEW" or "the Defendant"), discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. §§ 46a–60(a) *et seq.* On February 22, 2007, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Defendant filed a motion for summary judgment on all counts of plaintiff's complaint. (*See* dkt. # 18.) For the reasons set forth herein, the Defendant's motion (**dkt.# 18**) is **GRANTED in part and DENIED in part.**

## I. FACTS

Gallo was born on July 18, 1951. In May 1974[1], he began working for the De-

fendant as a Power Plant Operator ("Operator") at the Generation Department ("the Department").[2] As an Operator, the Plaintiff was responsible for starting the generators, distributing electricity to customers, and maintaining all related equipment, such as transformers and switches. The electrical distribution process required the Operator to do the following: oversee the amount of electricity delivered to customers by electrical breakers; monitor the amperages and voltages of such electricity; and train younger employees. The parties agree that the Plaintiff performed these duties as Operator from 1974 until his position was eliminated in April 2005, and that he had a number of different supervisors over the years. The parties further agree that the Plaintiff performed his duties in an acceptable manner throughout his tenure at SNEW.

The parties dispute whether the Plaintiff also performed supervisory functions as an Operator. According to the Plaintiff's deposition testimony, he occasionally performed the duties of a Supervisor while maintaining his responsibilities as Operator. For example, he testified that he supervised all Assistant Operators from 1971 until 2005. (*Id.*, Ex. 9, Gallo Dep. at 18:12–13.) In support of this assertion, the Plaintiff further notes that he supervised Chris Fichter ("Fichter") when he was first hired as an Assistant Operator. He also argues that he performed his Supervisor's duties whenever he was absent.

(*Id.* at 18:15–16.) In fact, the Plaintiff testified that he was paid as a Supervisor whenever he performed such duties. (*Id.*) In addition, the Plaintiff testified that his work and pay as a Supervisor were reflected on his payroll sheets rather than by his official title. (*See id.* at 18:21–19:3.)

In contrast, the Defendant argues that the Plaintiff did not have any supervisory duties as an Operator from 1993 until 2005. (*See id.*, Ex. 3, Hiscock Aff. at ¶ 6.) Despite this contention, the Defendant concedes that plaintiff supervised Fichter when he was first hired as an Assistant Operator. The Defendant also does not dispute the Plaintiff's assertion that he filled-in for his Supervisor when he was out and that he was paid at a supervisor's salary when he performed these duties. Rather, the Defendant asserts that the Plaintiff did not have supervisory authority because he was not responsible for managing the Department's budget or work schedule. The Defendant further contends that the Plaintiff did not have supervisory authority because he did not play a direct role in purchasing materials for the Department, instead he had to submit work order sheets to his supervisor. (*See id.*, Ex. 9 at 75:10–76:19.) Finally, the Defendant notes that plaintiff did not directly handle complaints submitted by Department employees. (*See id.* at 76:22–77:10.)

Although the parties agree that Fichter was promoted in 1993, they dispute the

---

1. Prior to his employment with SNEW, the Plaintiff served with the United States Air Force (the "Air Force"), where he managed electrical production at a power plant, oversaw the use of auxiliary equipment, and repaired various electrical components when necessary. (*See* dkt. # 18, Ex. 9, Gallo Dep. at 12:2–15.) While with the Air Force, he enrolled in two educational programs related to electrical power production. He received a Certificate of Training for completing a Power Production Proficiency Training Course and a

Certificate of Training for completing an Electrical Power Production Specialist Course. (*See id.* at 10:19–12:1.)

2. When the Plaintiff began working for the Defendant, the company was known as "South Norwalk Electric Works." (*See id.* at 22:25–23:5.) At that time, the City of Norwalk's electric and water departments were separate utilities.

nature and scope of his job. The Defendant argues that Fichter was appointed to a supervisory position in 1993. Although the Plaintiff admits that he reported to Fichter from 1993 until 2005, (*see id.* at 22:21–24), he nevertheless claims that Fichter held a dual role in which he was both Plaintiff's Supervisor and subordinate (*see id.* at 21:17–20). Specifically, the Plaintiff argues that even though Fichter obtained the title of Supervisor, he continued to perform the duties of an Assistant Operator under the Plaintiff's guidance. (*See id.* at 21:17–20.) By contrast, the Defendant asserts that from 1993 until 2005, Fichter maintained his role as Supervisor and never served under the Plaintiff as an Assistant Operator. (*See id.,* Ex. 3, Hiscock Aff. at ¶ 17.) Yet, the Defendant admits that Fichter continued to do the work of a Operator, when necessary, in addition to his other duties as a Supervisor.

The parties agree that by January 2001, the Department staff consisted of eight individuals: two Assistant Operators, five Operators, and one Generation Superintendent. The parties further agree that the Plaintiff served as one of the five Operators and that Fichter served as the Generation Superintendent. Thereafter, in July 2002, the Board of Electric Commissioners voted to decommission the Defendant's electrical generators at the power plant due to the deteriorating physical condition of the plant. (*See id.* ¶ 8.) Then, in the fall of 2002, the electrical generators were deactivated. Although the generators were out of service, the Defendant nevertheless continued to distribute to its customers electricity produced by other companies. The distribution process required Operators to oversee the substation by maintaining switches and transformers; handling emergency calls; and monitoring the breakers, amperages, and voltages. (*See id.,* Ex. 9, Gallo Dep. at 24:22–25:10.) The Plaintiff testified that he continued to perform these duties as Operator during the company's electrical distribution phase until his position was eliminated in April 2005. (*See id.* at 60:9–17.)

Then, in October 2002, the Board of Electric Commissioners voted to decrease the Department's staffing to two Operators and one Generation Superintendent. (*See id.,* Ex. 3, Hiscock Aff. at ¶ 9.) The Board of Electric Commissioners also authorized John Hiscock ("Hiscock"), the General Manager of the Second Taxing District of the City of Norwalk, to "make adjustments in staffing assignments ... and to continue to adjust the work force accordingly including the filling of existing department vacancies with qualified current employees whenever possible." (*Id.*) After the corporate restructuring took effect on November 1, 2002, (*see id.*), only three Department employees remained: one Generation Superintendent (Fichter) and two Operators (the Plaintiff and Norm MacDonald ("MacDonald")). (*See id.* at ¶ 10.) As previously discussed, the Defendant continued to distribute electricity even though it had deactivated its generators. Thus, the Plaintiff continued to perform several carryover duties as Operator, such as: maintaining switches and transformers and managing breakers, amps, and voltages.

In January 2003, the Defendant eliminated MacDonald's Operator position. (*See id.,* ¶ 11.) The Defendant then transferred MacDonald to the position of Facilities Maintenance II ("Maintenance II").[3]

---

**3.** The Plaintiff claims that although MacDonald assumed the Maintenance II position, he performed the duties of a Facilities Mainte-

nance I ("Maintenance I") worker. (*See id.* at 30:3–6.) While Maintenance II employees mostly perform physical repairs, Maintenance

(*See id.*) The Plaintiff and Fichter jointly assumed the duties MacDonald had performed as a Operator. (*See id.* Ex. 9, Gallo Dep. at 30:11–17.)

Thereafter, in December 2003, the City of Norwalk's Second Taxing District (the "Second Taxing District") combined the electric and water departments into a single utility: SNEW. In addition, the Board of Electric Commissioners and the Board of Water Commissioners were combined into a single organization known as the Board of District Commissioners (the "Board"). The Defendant asserts that the Board, on April 19, 2005, voted to eliminate all Operator positions from the organizational chart of the Second Taxing District. (*See id.*, Ex. 3, Hiscock Aff. at ¶ 15.)

The Plaintiff's Operator position was among those eliminated. (*See id.*, Ex. 9, Gallo Dep. at 32:23–25.) On approximately April 21, 2005, the Plaintiff received a letter from Hiscock, which notified him that "[a]s a result of the recent wage, benefit, organizational structure changes and job description changes, [his] position ha[d] been eliminated from the Department's organizational structure." (*Id.*, Ex. 10 at ¶ 1.) The letter also informed the Plaintiff that "[t]he reorganization was necessary to shift resources to the areas most beneficial to our rate payers and electors." (*Id.*)

Shortly after the Plaintiff received this letter, he met with Hiscock, the General Manager of the Second Taxing District, and Jane Price ("Price") to discuss the company's decision. (*See id.*, Ex. 9, Gallo Dep. at 33:24–34:3.) Hiscock told the Plaintiff that his position was eliminated because there was "no more [electrical] generation." (*Id.* at 34:20–22.) Hiscock then presented the Plaintiff a choice of four open positions within other parts of

the company: Ground Maintenance I; Ground Maintenance II; Facilities Maintenance I; and Facilities Maintenance II. (*See id.* at 34:2–18.)

The Plaintiff subsequently accepted the Maintenance II position. (*See id.* at 34:19.) When he accepted this position, he received a revised compensation package, which consisted of his current rate of pay, plus a 3.25 percent cost of living increase. (*See id.* at 35:12–15.) The Plaintiff asserts that he performed "terrible" and menial tasks as a Maintenance II worker, such as cleaning gutters, repairing toilets, directing traffic, and being a "gofer." (*See id.* at 66:1–3.)

The Defendant maintains that it moved the Plaintiff to the maintenance department because it needed to improve company efficiency by "[making] adjustments in staffing assignments ..., and to continue to adjust the work force accordingly including the filling of existing department vacancies with qualified employees whenever possible." (*Id.*, Ex. 3, Hiscock Aff. at ¶ 9.) The Plaintiff argues that SNEW eliminated several jobs, including his Operator position, based on factors other than the company's need to reorganize its employees following the Second Taxing District's merger of its water and electric departments. Indeed, the Plaintiff claims that the Defendant eliminated his position because of his age. (*See id.*, Ex. 9, Gallo Dep. at 53:18–54:23.) In support of this contention, the Plaintiff testified that when he went to Price's office at the Human Resources Department to obtain his paperwork for the Maintenance II position, she asked him, "Why don't you just retire?" (*Id.* at 64:23–25.) The Plaintiff also provided deposition testimony that several SNEW employees in the maintenance department[4] referred to him as an "old geez-

I employees mostly complete paperwork. (*See id.* at 30:7–10.)

4. These SNEW employees are Jim Gay, Tom Collins, and a man named "Jim." The Plain-

er" and an "old timer." (*Id.* at 55:7–9.) In addition, the Plaintiff points to age-related comments Hiscock made in his presence. In October of 2006, the Plaintiff attended a going-away party for Fichter, during which he sat at a table with Hiscock and two other SNEW employees. During this party, Hiscock began to discuss the ages of current SNEW employees with two other employees. (*See id.* at 53:18–54:23.) The Plaintiff was particularly distressed when Hiscock argued with fellow employees, in his presence, about which SNEW employee was youngest. (*See id.*)

In support of his contention that age discrimination was a motivating factor in SNEW's decision to eliminate his position, the Plaintiff further argues that the Defendant retained younger, less experienced workers. He also claims that the Defendant should have kept him on the "electrical side" rather than moving him to the maintenance department, because he was more qualified to serve in the electric department than other SNEW workers employed there. (*See id.* at 79:20–25.)

Lastly, the Plaintiff contends that, after his Operator position was eliminated, Fichter essentially assumed his old job because Fichter's supervisory authority was eliminated. For instance, the Plaintiff points to evidence showing that, after he was transferred to the Maintenance Department, Fichter no longer supervised any employees. (*See* dkt. # 21, Ex. 2.) The Plaintiff also notes that on April 19, 2005, approximately two days before the Plaintiff received Hiscock's letter, Fichter's title was changed to "Substation and Switching Superintendent." (*See* dkt. # 18, Ex. 3, Hiscock Aff. ¶ 16.) Although Fichter's title was changed in 2005 because SNEW no longer generated its own electricity, it merely distributed electricity produced by other companies, (*see id.*), the

Plaintiff points out that the power plant had ceased generation in November 2002. In addition, the Plaintiff offers evidence showing that in May 2006, Fichter's title was again changed to "Substation and Switching Engineer." The Plaintiff claims that Fichter's position, stripped of a supervisory role and left with only electrical duties, was in essence an "Operator" position that the Plaintiff was qualified to perform.

## II. DISCUSSION

The Plaintiff argues that SNEW eliminated his position on the basis of his age, in violation of the ADEA and the CFEPA. For the reasons set forth herein, the Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

### A. STANDARD

A motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] face with respect to which [it] has the burdens of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)). A dispute concerning a material fact is genuine " 'if evidence is such

tiff testified that all of these employees are younger than him. (*See id.* at 55:4–23.)

172

that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. ADEA

The Plaintiff argues that SNEW discriminated against him on the basis of his age in violation of the ADEA. The ADEA seeks to "promote employment of older persons based on their ability rather than age ... [and] to prohibit arbitrary age discrimination in employment...." 29 U.S.C. § 621(b). In addition, the ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

ADEA claims are analyzed under the familiar McDonnell Douglas burden-shifting analysis. *See Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) the Supreme Court established an "allocation of the burden of production and an order for the presentation of proof...." Under that framework, a plaintiff alleging a violation of the discrimination statutes must establish a *prima facie* case by showing that he: (1) was a member of a protected class; (2) performed his job in a satisfactory manner;[5] (3) suffered an adverse employment action; (4) in circumstances giving rise to an inference of discrimination. *Schnabel v. Abramson*, 232 F.3d at 87 (2d Cir.2000); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."). If the plaintiff is able to establish the elements of the *prima facie* case, a presumption arises that the employer unlawfully discriminated against him, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action which, if believed by a jury, would support a finding of unlawful discrimination. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997). The employer's legitimate, nondiscriminatory reason must be both "clear and specific." *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985). The defendant's burden at this stage is one of production only. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Once the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the presumption dissipates and the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Patterson v.*

5. This element is alternatively formulated as "qualified for the job." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001) (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.2000)).

*County of Oneida, N.Y.,* 375 F.3d 206, 221 (2d Cir.2004). In order to survive summary judgment at this stage, the plaintiff must show that there is sufficient evidence to permit a rational jury to infer that the employer's stated reason is a pretext for discrimination. *See id.* (citing *Smith v. Am. Express Co.,* 853 F.2d 151, 154–55 (2d Cir.1988)). To meet this burden, the plaintiff may rely "on the evidence constituting the *prima facie* case, together with supportable inference to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." *Carlton,* 202 F.3d at 135; *see also Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. The plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the employer's adverse employment action, or that the employer's proffered reasons played no role in the adverse employment decision, but only that any lawful motives were not the only reasons and that the plaintiff's protected status contributed to the employer's decision. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 78–79 (2d Cir.2001); *Renz v. Grey Adver. Inc.,* 135 F.3d 217, 220–22 (2d Cir.1997); *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995).

 Whether a plaintiff has met his ultimate burden of proving discrimination must be determined on a case-by-case basis after considering a number of factors, including the strength of the *prima facie* case, the probative value of any proof that the employer's stated reason for the adverse employment action is false, and any other evidence that supports the employee's case and may be properly considered on a motion for judgment as a matter of law. *Reeves,* 530 U.S. at 148–149, 120 S.Ct. 2097. Proof that the employer's proffered reason for the adverse employment action is unworthy of belief constitutes "circumstantial evidence that is pro-

bative of intentional discrimination." *Id.* at 148, 120 S.Ct. 2097. Evidence that the employer's reason is false, combined with the *prima facie* case, could be sufficient to allow the issue to go to the jury. *Id.* Summary judgment may be granted in favor of the employer, however, if the record conclusively reveals that there was "some other non-discriminatory reason for the employer's decision [or] the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and un-contradicted evidence that no discrimination had occurred." *Id.*

Here, the Plaintiff has made a *prima facie* showing of age discrimination. The parties agree that the Plaintiff has satisfied the first two prongs of a *prima facie* case. First, the Plaintiff, at age fifty-three, was a member of the protected class when his position was eliminated. Second, the parties do not dispute that the Plaintiff was qualified for his position and that he performed his duties as Operator in an acceptable manner. The parties dispute, however, whether the Plaintiff has satisfied the third and fourth prongs of the *prima facie* case. Indeed, the Defendant argues that the Plaintiff is unable to show that the elimination of his position of Operator and transfer to the maintenance department was an adverse employment action that occurred under circumstances that could support an inference of discrimination.

 The Second Circuit broadly defines an adverse employment action by holding that it is a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (internal quotation marks omitted). "To be 'materially adverse,' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration

of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). Adverse employment actions typically include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir.1995) (citing *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). Although a plaintiff's subjective perception that a demotion has occurred is not enough, a transfer qualifies as an adverse employment action if the reassignment is, in truth, a demotion. *See Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir.1996). To determine whether a demotion has occurred, the question is whether the transfer involves a dramatic downward shift in skill level required to perform job duties. Other considerations include allegations of harm to plaintiff's reputation, limited opportunities for advancement, and reduced earning potential. *Id.* Furthermore, because the protections of Title VII and the ADEA are not limited to "instances of discrimination in pecuniary emoluments," *Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 366 (2d Cir.1980), a transfer that "arguably alter[s] the terms and conditions of his employment in a negative way," is sufficient to satisfy the *McDonnell Douglas* prima facie test. *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 22 (2d Cir.1996); *Rodriguez*, 620 F.2d at 365 (transfer constituted adverse employment action where plaintiff proffered evidence demonstrating that the transfer was, "in effect, a demotion that would constitute a serious professional setback and stigma to her career"); *see also Zuffante v. Elderplan, Inc.*, No. 1:02CV3250(WHP), 2004 WL 744858, *5, 2004 U.S. Dist. LEXIS 5425, at *15 (S.D.N.Y. Mar. 31, 2004) (lateral transfer, involving no change in salary or benefits, was an adverse employment action where

transfer resulted in decreased responsibilities). In the instant case, the Defendant contends that the Plaintiff did not suffer an adverse employment action because his base salary remained the same when he assumed the post of Maintenance II. The Plaintiff argues that he suffered an adverse employment action because (1) even though his base salary remained unchanged, his overall income decreased due to the loss of overtime opportunities and (2) his transfer from the electrical department to the maintenance department was a demotion.

■ The court finds that the plaintiff has produced sufficient evidence for a reasonable juror to conclude that he suffered an adverse employment action. A reasonable factfinder could find that his transfer was a demotion which qualified as an adverse employment action because of the dramatic downward shift in skills required to perform the duties of a Maintenance II worker relative to those of an Operator. Rather than operating a power plant by monitoring its electrical generation and distribution equipment, a duty for which plaintiff was specially qualified, the Plaintiff was instead required to repair toilets, clean gutters, and maintain the physical grounds of the facility. The fact that the Plaintiff was paid at the rate of an Operator while serving as a Maintenance II worker is outweighed by the fact that a reasonable juror could find that plaintiff suffered a professional setback, faced stigmatization in the workplace, and sustained a negative alteration of the terms and conditions of his employment. In light of these findings, a reasonable juror could conclude that the Plaintiff suffered an adverse employment action.

■ The Plaintiff has also demonstrated that there is a genuine issue of material fact with respect to the fourth

prong of a *prima facie* case. The Defendant argues that the plaintiff is unable to show that the elimination of the Plaintiff's position occurred under circumstances that could give rise to an inference of discrimination because at the time the Plaintiff's position was eliminated, he was the sole remaining Operator, thus no other Operators, older or younger, were treated any differently than the Plaintiff. An inference of discrimination can be proven in connection with downsizing or reorganization where positions are being eliminated if younger employees are retained. *See Uranyi v. Multiplan, Inc.*, No.04–CV–2685(JFB)(VVP), 2006 WL 1662616 at *6 (E.D.N.Y.2006). Here, the Plaintiff has produced evidence showing that the Defendant opted to retain Fichter, who was approximately twenty years younger than the Plaintiff. Thus, he has created a genuine issue of material fact with respect to the fourth prong of the *prima facie* case.

Moreover, the Plaintiff has demonstrated that there is a factual dispute surrounding what position Fichter held when the Plaintiff, after working as an Operator for 31 years, was transferred to the Maintenance Department. The Second Circuit has "stressed that the similarity of the jobs held by an older and younger employee is the touchstone for determining whether a lay-off of the older [employee] may be found to be an ADEA violation by the trier of fact." *Burger v. New York Inst. of Tech.*, 94 F.3d 830, 835 (2d Cir. 1996). The Plaintiff has established a genuine issue of material fact with respect to his position and that of Fichter. According to the Defendant, Fichter was retained as a "Substation and Switching Superintendent" because this position included supervisory responsibilities. Despite this assertion, the Defendant admits that Fichter did not supervise any employees in this new post. Thus, the Plaintiff has created a genuine issue of material fact with respect to whether, without supervising any employees, Fichter's duties as a "Substation and Switching Superintendent" were similar to the Plaintiff's duties as an Operator.

In addition, the Plaintiff has offered evidence that SNEW employees in supervisory roles who were involved with his transfer allegedly made ageist remarks. For instance, the Plaintiff testified that when he went to pick up his Maintenance II paperwork, Price, asked him, "Why don't you just retire?" (Dkt. # 18, Ex. 9, Gallo Dep. at 64:23–25.) Price was also present at the meeting between Hiscock and the Plaintiff, during which they informed the Plaintiff that his position was being eliminated and that he could move to one of four open positions within the company. The Plaintiff further testified that Hiscock, the General Manager of the entire Second Taxing District, argued about the identity of SNEW's oldest employee while in plaintiff's presence. (*See id.* at 53:18–54:7.) Since Hiscock served as the General Manager of the Second Taxing District and received authority from the Board of District Commissioners to "make adjustments in staffing assignments . . ., and to continue to adjust the work force accordingly including the filling of existing department vacancies with qualified current employees wherever possible," (*id.*, Ex. 3, Hiscock Aff. at ¶ 9), his comments to plaintiff, could cause a reasonable juror to infer a motive of age discrimination. Lastly, the Plaintiff has also offered evidence showing that several younger SNEW employees in the maintenance department referred to plaintiff as an "old geezer" and an "old timer." (*See id.*, Ex. 9, Gallo Dep. at 55:4–23.) A reasonable juror, considering the totality of this evidence, could find that plaintiff suffered an adverse employment action in circumstances giving rise to an inference of discrimination. The Plaintiff has therefore met his *de minimis* burden of estab-

lishing a *prima facie* case of age discrimination.

■ Since the Plaintiff has satisfied his initial burden, the Defendant now has a burden to proffer a legitimate, nondiscriminatory reason for eliminating the Plaintiff's position. The Defendant argues that the elimination of the Operator position was due to the cessation of the power plant operation. SNEW has met its burden by offering evidence that the decision to eliminate the Operator position was a business decision intended to shift resources to areas most beneficial to its rate payers and electors following the reorganization of the Second Taxing District's electric and water departments in 2002. (*See id.*, Ex. 3, Hiscock Aff. at 4.) Indeed, the Defendant claims that upon deactivation of its generation plant, the company no longer needed to employ plaintiff as an Operator. This offer of proof is sufficient to meet the Defendant's burden at this stage because it bears a burden of production, not a burden of persuasion. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097.

■ Due to the fact that the Defendant has satisfied its burden, the Plaintiff must show that there is sufficient evidence to permit a rational jury to infer that the Defendant's stated reason is pretext for unlawful age discrimination. The Plaintiff has met his burden by establishing that there are factual disputes surrounding the veracity of the Defendant's proffered reason for his demotion. First, the Plaintiff has established that there is a factual dispute surrounding the Defendant's assertion that it eliminated the Operator position due to the deactivation of its power plant. The Plaintiff has offered evidence showing that although SNEW deactivated its generators in 2002, it was still engaged in the distribution of electricity. In support of this assertion, the Plaintiff testified that the Defendant continued to distribute electricity without producing it from within, a process that required operation of the power plant and the control room. (*See* dkt. # 18, Ex. 9, Gallo Dep. at 24:22–25:10, 60.) The Plaintiff further offers evidence showing that after the Defendant decommissioned the generators, his job responsibilities remained unchanged, with the lone exception of his no longer having to start the generators. Lastly, he offered evidence demonstrating that, after he was transferred to the Maintenance II position, Fichter took over his responsibilities.

If these factual disputes are resolved in plaintiff's favor, a jury may find that the Defendant's proffered reason for the Plaintiff's demotion—consolidation of company resources to better serve its rate payers and electors—was false and a pretext for age discrimination against plaintiff in violation of the ADEA. Additionally, for the reasons previously stated, there are disputed issues of fact regarding whether the Plaintiff's age motivated the Defendant's decision to eliminate his position and transfer him to the Maintenance II position. The Defendant, moreover, has also failed to show that a genuine issue of material fact does not exist with respect to plaintiff's discrimination claim. Therefore, the Defendant's motion for summary judgment with respect to the Plaintiff's ADEA claim is DENIED.

## C. CFEPA

A careful reading of the Plaintiff's Complaint reveals that within the Second Cause of Action, the Plaintiff, in effect, asserts three separate CFEPA claims. (*See* dkt. # 1, Pl. Compl.) In addition to alleging that age was a motivating factor in the Defendant's decision to remove him from the Operator position, the Plaintiff also alleges the following:

Because the plaintiff's age was a motivating factor and made a difference in

the decision made by the defendant to terminate the plaintiff's employment, the defendant violated the provisions of the Connecticut Fair Employment Practices Act....

Because the plaintiff's age was a motivating factor and made a difference in the decision made by the defendant not to hire the plaintiff to positions for which he was otherwise qualified, the defendant violated the provisions of the Connecticut Fair Employment Practices Act....

(*Id.* at ¶ 162–163.) Thus, in addition to alleging that the defendant unlawfully removed the Plaintiff from the position of Operator, he alleges that the defendant unlawfully terminated him and unlawfully failed to hire him.

█ Section 46a–60(a) of the Connecticut General Statutes provides in relevant part:

It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's ... age....

Conn. Gen.Stat. § 46a–60(a)(1). The Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA. *See Bd. of Educ. of the City of Norwalk v. Comm'n on Human Rights and Opportunities*, 266 Conn. 492, 505, 832 A.2d 660 (2003) (applying the *McDonnell Douglas* framework to CFEPA claims); *Levy v. Comm'n of Human Rights and Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (Conn.1996) (concluding that "we review federal precedent concerning employment discrimination for guidance in enforc-ing our own anti-discrimination statutes."); *see also McInnis v. Town of Weston*, 375 F.Supp.2d 70, 85 (D.Conn.2005) (stating that CFEPA claims proceed under the same analysis as ADEA claims). In addition, "[i]n an age discrimination case, the complainant need not establish that the person who ultimately was offered the position does not fall within the protected class." *Bd. of Educ. of the City of Norwalk*, 266 Conn. at 505, 832 A.2d 660 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). The court shall address each of the Plaintiff's CFEPA claims seriatim.

### 1. UNLAWFUL TRANSFER TO MAINTENANCE II

█ First, the Plaintiff claims that the Defendant unlawfully removed him from the Operator position. This claim is a mirror image of the Plaintiff's ADEA claim, *see supra*, Section II.B. Because CFEPA claims proceed under the analysis as ADEA claims, the Defendant's motion for summary judgment on this claim is **DENIED** for the same reasons discussed above, *see supra*, Section II.B.

### 2. UNLAWFUL TERMINATION

█ The Plaintiff also alleges that the Defendant violated Conn. Gen.Stat. § 46a–60(a)(1) by basing its decision to terminate his employment on his age. To establish a *prima facie* case of age discrimination under the CFEPA, a plaintiff must show, among other things, that he suffered an adverse employment action. *Russ v. Town of Watertown*, No. 3:04CV014(AWT), 2005 WL 734344, at *2 (D.Conn. Mar.29, 2005) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Wroblewski v. Lexington Gardens, Inc.*, 188 Conn. 44, 53, 448 A.2d 801 (1982) (applying *McDonnell Douglas* test to

CFEPA claim)). Here, the Plaintiff has not adduced any evidence showing that he was terminated. Indeed, he provided deposition testimony wherein he admitted that he continued to work for the Defendant after his position was eliminated. Thus, the Plaintiff's discriminatory termination claim fails as a matter of law because he has not adduced any evidence showing the he suffered this adverse employment action, i.e., termination.[6] Accordingly, the Defendant's motion for summary judgment on the Plaintiff's CFEPA discriminatory termination claim is **GRANTED.**

### 3. FAILURE TO HIRE

The Plaintiff further alleges that the Defendant violated Conn. Gen.Stat. § 46a–60(a)(1), because "[his] age was a motivating factor and made a difference in the decision made by the defendant not to hire the plaintiff to positions for which he was otherwise qualified." (Dkt.# 1, Pl. Compl.¶ 163.) A discriminatory failure to hire claim brought under Conn. Gen.Stat. § 46a–60(a)(1) is analyzed pursuant to the familiar *McDonnell Douglas* burden-shifting framework. *See City of Hartford v. Comm'n on Human Rights and Opportunities,* No. CV03 0520745 S, 2004 WL 424197, at *14 (Conn.Super.Ct. Feb.19, 2004). Thus, in order to establish a *prima facie* case of discrimination, the plaintiff must demonstrate that he "applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of discrimination." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

Here, the Plaintiff cannot make out a *prima facie* failure to hire claim because he has not offered any evidence showing that he applied for any open positions within the company. In *Petrosino v. Bell Atlantic,* 385 F.3d 210, 227 (2d Cir. 2004), the court held that a specific application for an available position is required "to ensure[ ] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." The court explained that this requirement ensures that the factfinder is not forced to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of unknown jobs, and the plaintiff's willingness to accept those unknown jobs. *Id.* In addition, this requirement protects employers from being unfairly burdened of having to "keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply." *Id.* Here, although the plaintiff argues that he was qualified to perform both the Apprentice Line Worker position and Fichter's position, he has failed to adduce any evidence showing that he applied for either of these positions. In fact, with respect to the Apprentice Line Worker position, he provided deposition testimony wherein he admitted that he did not apply for that position, (see dkt. # 18, Ex. 9, Gallo Dep. at 46:16–19), and that he did not possess the certification for this job (see *id.* at 46:11–13). Moreover, the Defendant offers undisputed evidence that Cruz and Micha were appointed to this position before the Plaintiff's position was

---

**6.** The court observes that a review of the Plaintiff's Corrected Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and his Complaint reveals that the Plaintiff did not assert a constructive discharge claim. (*See* dkt. # 23, Pl. Corrected Opp'n Mem.; dkt. # 1, Pl. Compl.) As such, the court shall not *sua sponte* consider the merits of such a claim.

eliminated. Accordingly, the Plaintiff's CFEPA failure to hire claim fails as a matter of law because he has not presented any evidence showing that he applied for the above-mentioned open positions. In light of this fact, the Plaintiff has failed to satisfy his *de minimis* burden to show circumstances from which an inference of discrimination could be drawn, and he is not entitled to a trial based on his speculative assertions on matters as to which he has no knowledge and no evidence. (*See Goenaga v. March of Dimes*, 51 F.3d 14 (2d Cir.1995)). Accordingly, the Defendant's motion for summary judgment is **GRANTED** with respect to this claim.

## III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (dkt.# 18) is **GRANTED in part** and **DENIED in part.** To the extent the Defendant moves for summary judgment on the Plaintiff's ADEA claim, its motion is DENIED. To the extent the Defendant moves for summary judgment on the Plaintiff's claim that the Defendant unlawfully removed the Plaintiff from the position of operator, in violation of the CFEPA, its motion is DENIED. To the extent the Defendant moves for summary judgment on the Plaintiff's claim that the Defendant unlawfully terminated him and unlawfully failed to hire him, in violation of the CFEPA, its motion is GRANTED.

The parties shall file a joint trial memorandum on or before October 19, 2007. This case shall be trial ready by November 2007.

**IT IS SO ORDERED.**