**Ann WEICHMAN, Plaintiff,**

v.

**CHUBB & SON, a division of Federal Insurance Co., Defendant.**

**No. 3:05CV01403 (DJS).**

United States District Court, D. Connecticut.

May 1, 2008.

Peter D. Goselin, Livingston, Adler, Pulda, Meiklejohn & Kelly, Hartford, CT, for Plaintiff.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Ann Weichman ("the Plaintiff"), brings this action against the defendant, Chubb & Son, a division of Federal Insurance Co. ("the Defendant"), alleging: (1) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. §§ 46a–60 *et seq.* ("CFEPA") (Count One); (2) retaliation in violation of the ADEA and CFEPA (Count Two); interference and discrimination in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") (Count Three); and negligent infliction of emotional distress in violation of Connecticut common law (Count Four). Now pending is the Defendant's motion for summary judgment (dkt. # 34) pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). For the reasons stated herein, the Defendant's motion for summary judgment (**dkt. # 34**) is **GRANTED**.

### I. FACTS

In August 2000, the Defendant hired the Plaintiff, who was 52 years old at the time, as an Account Underwriter in the Defendant's Simsbury, Connecticut office. From 2001 through November 2002, Chris Holmes ("Holmes"), was the Plaintiff's supervisor. During Holmes' tenure as the Plaintiff's supervisor, he had emailed the Plaintiff at least four times with respect to the Plaintiff's tardy arrivals at work.[1] (*See* dkt. # 35, Ex. 6.) In one those emails, Holmes stated to the Plaintiff that the standard hours under Chubb's Punctuation Policy ("the Policy")[2] were either 8:30 a.m. until 5:00 p.m., with one half hour for lunch, or 9:00 a.m. until 5:30 p.m., with one

---

1. It is undisputed that, during her employment with the Defendant, the Plaintiff's work hours were from 8:30 a.m. until 5:00 p.m., with one-half hour for lunch.

2. The Policy also states that all employees "are expected to arrive at work on time, return promptly from lunch, and work steadily throughout the day."

half hour for lunch. Holmes also asked the Plaintiff to decide which regular schedule she would abide by and let him know, and he warned her that if she was going to be late, she needed to inform him and then she would have to make up that missed time.

On November 5, 2002, Holmes sent his last email to the Plaintiff, noting that even though her regular hours were from 8:30 a.m. until 5:00 p.m., she was arriving at 9:30 a.m. (or later) and still leaving by 5:00 pm. Again she was asked to inform him if she was going to be late. Holmes also indicated to the Plaintiff that Paul Jackie ("Jackie") would be taking over his position as her supervisor and she should report to him beginning on November 11, 2002.

On November 11, 2002, Jackie, who was 32 years old at the time, became the Plaintiff's supervisor. While Jackie was the Plaintiff's supervisor, Aleeta Orofino Jeamal ("Orofino"), a 29 year old female, was one of the Plaintiff's Human Resource Managers. With regard to employees arriving to work late, Jackie would allow for a ten-minute grace period if he noticed a team member arriving late at his or her desk. That team member would then have the option to make up the time during that particular week; if the team member did so, she would not be marked "tardy." If she did not make up that time, she would then be marked "tardy." All of the team members under Jackie's supervision knew that Jackie used a specific wall clock in the office to measure tardiness. Chubb's Punctuation Policy stated that an employee who was ten minutes late twelve times in a given year could be terminated.

Chubb employees had an electronic card reader ("keycard") that allowed them access into the building at several entrances. This keycard recorded the time of all employees entering the building. The only time the keycard did not record an employee's entrance was when an employee would "piggyback" onto another employee's keycard when entering the building at the same time, i.e., one employee would enter the building when another employee used his or her keycard. An electronic report, called a "door report," was available to Chubb by hard copy on each individual employee who held a keycard. The door report was to verify an employee's entrance into the building. A door report would not show, however, whether an employee had piggybacked onto another employee's keycard on a particular day, and it did not record when an employee exited the building.

In Chubb's Attendance Listing, Jackie recorded the Plaintiff as being late eight times between January 2, 2003 and February 11, 2003. In accordance with Chubb's policy, Jackie sent the Plaintiff an email when she was reached her ninth tardy and provided her with a reference to Chubb's Punctuality Policy. On March 5, 2003, the Plaintiff was tardy for the tenth time and was given her first written warning. The warning indicated that if the Plaintiff incurred an eleventh tardy, it would be the last one she was eligible for during that calendar year. If she was late for a twelfth time, it could result in her termination.

On May 16, 2003, the Plaintiff received a written warning for "unprofessional behavior." In the warning it stated although her underwriting results were good, she was "negative, confrontational, condescending and disrespectful". Thereafter, on May 20, 2003, the Plaintiff complained to the Defendant's "Voice of the Employee" hotline ("VOE") that she was being discriminated against because of her age. The VOE is a hotline that allows employees to voice their concerns without fear of retaliation. The Plaintiff also alleges that

she complained to Valerie LaFontaine ("LaFontaine"), Jackie's manager, about Jackie and Orofino's alleged age discrimination against her. The Plaintiff believes she spoke to LaFontaine at least twice about the alleged age discrimination, but has no evidence to back up when these meetings took place. Latrell Johnson ("Johnson"), Senior Employee Relations Consultant, then assigned Holly Ehrens ("Ehrens"), a Human Resource generalist, to investigate the Plaintiff's concerns. On June 10, 2003, Ehrens interviewed the Plaintiff, Jackie, Orofino and Margaret Reynolds ("Reynolds"), a Human Resource Manager in Chubb's Simsbury office.

During this investigation, the Plaintiff contacted Ehrens and informed her of additional concerns she had. The Plaintiff believed that Jackie made false accusations regarding her tardiness and that she was charged paid time off ("PTO") as a result. She also believed that others in her work group were also late but not charged for their tardiness. According to the Plaintiff, she was being subjected to harassment and a hostile work environment. For example, the Plaintiff claims to have overheard Jackie on the telephone stating that "older people" "slow down" and "should retire." The Plaintiff believed Jackie, who was within hearing distance of her and her co-workers, was speaking about her and older people. She did not discuss what she heard with any of her co-workers and did not write down any notes when this incident took place.

The Plaintiff also alleged that she did not have goals set for the 2002 review period and that her performance review was inaccurate. She indicated to Ehrens that she spoke to Reynolds about her performance and that it took Reynolds four months to respond to her. The Plaintiff also felt that the written warning she received on May 16, 2003 regarding her behavior was based on inaccurate information. With this additional information, Ehrens again interviewed Orofino on August 28, 2003 and Jackie on September 12, 2003.

On August 6, 2003, the Plaintiff took a leave of absence under the FMLA due to an extruded disc in her lower back. She returned to work on August 18, 2003 with a modified work schedule of six to eight hours per day.[3] On September 8, 2003 she resumed her normal eight hour work day but continued to require the FMLA time to attend follow up appointments due to her medical condition. The Plaintiff admits that neither Jackie nor Orofino expressed any disapproval of her leave or limited schedule.

After her return to work, the Plaintiff had discussions with Orofino about her need for accommodations due to her medical condition. Specifically, the Plaintiff desired an ergonomically-designed chair, and a parking permit that would allow her to park closer to the building. The Plaintiff admits that Orofino responded to the questions regarding obtaining a parking permit, ensured that the Defendant performed an ergonomic evaluation of the Plaintiff's work station, and ordered a more appropriate chair for the Plaintiff.

The Plaintiff had spoken to Jackie about the additional medical appointments she would need to attend, and Jackie apparent-

---

**3.** Although the Plaintiff, in her Local Rule 56(a)(2) Statement, denied that she returned to work on or about August 18, 2003 working a six- to eight-hour workday, her citation to her deposition testimony does not support this denial. Furthermore, the Plaintiff herself pled this fact in her amended complaint. (*See* dkt. # 13 ¶ 19.) Therefore, the court accepts as true that the Plaintiff returned to work on or about August 18, 2003 working a six- to eight-hour workday.

ly replied, "Don't worry about it. Don't worry about anything. Take all the time you need." On September 8, 2003 the Plaintiff had to leave work early because she had an appointment with her doctor. The Plaintiff claims she was told by Jackie that she would have to make up the time she would be missing to attend her doctor's appointment. The Plaintiff explained to Jackie that it would be difficult for her to make up the time during that particular week, because she was still in a lot of pain and had a couple of nights of physical therapy and a doctor's appointment that week. Still, on September 10, 2003 at 5:30 p.m., the Plaintiff sent an email to Jackie indicating she was making up 10 minutes, and 30 minutes from Monday's doctor's appointment." According to the Plaintiff, Jackie showed her no compassion with regard to her medical condition, and referred to her injury as "whatever it is you have."

The Plaintiff's employment was terminated on September 12, 2003. Jackie had recorded a twelfth instance of the Plaintiff's tardiness. Thus, the Defendant claims that the Plaintiff was terminated under its Punctuality Policy.

Subsequent to the Plaintiff's termination, Ehrens issued her report with regard to the Plaintiff's complaints. In her report, dated September 15, 2003, Ehrens concluded that the Plaintiff's allegations of harassment and hostile work environment were not substantiated. Ehrens also noted that the Plaintiff could be a very difficult person to work with and there were several circumstances that led to the mutual frustrations between the Plaintiff and Jackie, Orofino and Reynolds, which ultimately led to the hostility that had escalated amongst them. Ehrens also concluded both Jackie and the Plaintiff had very negative views toward each other. With respect to the Plaintiff's concern about her review, Ehrens stated that Jackie should have been able to back up the review with specifics or examples when the Plaintiff had questions. Jackie also admitted that the Plaintiff was hearing some of the feedback in the review for the first time. As for the PTO that was charged to the Plaintiff, a door report was run and it was discovered that the Plaintiff was there on one of the days in question and she was credited back that time. In conclusion, Ehrens thought that the Plaintiff should have access to a senior human resource person that was not directly involved with the Plaintiff or the incidents that had occurred. She also believed the Plaintiff would benefit from an human resource person coaching her on appropriate behavior in the workplace, managing interpersonal relationships in the workplace and practicing good collaboration and teamwork.

## II. DISCUSSION

The Plaintiff alleges that the Defendant's conduct constituted discrimination and retaliation in violation of the ADEA, the FMLA, and CFEPA. In addition, the Plaintiff alleges that the Defendant negligently inflicted emotional distress upon her. The Defendant has moved for summary judgment on all counts of the Plaintiff's complaint. The court shall discuss the Plaintiff's claims seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving par-

ty "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. AGE DISCRIMINATION

The ADEA provides that "[i]t shall be unlawful for an employer ... to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's prohibition against discrimination based on age protects employees who are at least forty years of age. 29 U.S.C. § 631(a). CFEPA directs that "[i]t shall be a discriminatory practice in violation of this section[ ][f]or an employer ... to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's ... age...." Conn. Gen.Stat. § 46a–60(a)(1).

The Second Circuit analyzes ADEA claims by using the burden-shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001). In addition, "[t]he Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFE-PA." *Farrar v. Town Of Stratford,* 537 F.Supp.2d 332, 348 (D.Conn.2008); *see Levy v. Comm'n of Human Rights and Opportunities,* 236 Conn. 96, 103, 671 A.2d 349 (1996) ("Although this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes."). Accordingly, the court will analyze the Plaintiff's ADEA and CFEPA age discrimination claims together. *See Williams v. Quebecor World Infiniti Graphics,* 456 F.Supp.2d 372, 383 (D.Conn.2006).

"First, a plaintiff must establish a *prima facie* case of age discrimination." *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000). "To establish a *prima facie* case of age discrimination, a plaintiff must show four things: (1)[s]he is a member of the protected class; (2)[s]he is qualified for her position; (3)[s]he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of age discrimination." *Abdu–Brisson,* 239 F.3d at 466 (footnote omitted). "The burden of establishing a *prima facie* case is not a heavy one. One might characterize it as minimal." *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir.2000).

Once the plaintiff has established a *prima facie* case of age discrimination, "the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions." *Schnabel*, 232 F.3d at 87. If, however, the employer articulates such a legitimate, nondiscriminatory business rationale, "the plaintiff has the burden of proving that [her] age was the real reason for [her] discharge." *Id.* That is, "the final burden rests on the plaintiff to prove not only that the proffered non-discriminatory reason was pretextual but also that the defendant discriminated against the plaintiff." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir.2001); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

There is no dispute that the Plaintiff has met the first three requirements of her *prima facie* case. The Defendant does argue, though, that the Plaintiff has not established that the circumstances surrounding her termination give rise to an inference of age discrimination. The court, however, disagrees. The burden for establishing a *prima facie* case is minimal, and the court believes that, considering the difference in ages between Jackie and the Plaintiff, and considering the Plaintiff was replaced by a younger worker, the Plaintiff has met this burden.

The burden then shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the Plaintiff's termination. The Defendant has stated that, pursuant to its policies, it terminated the Plaintiff because of her repeated tardiness. This is a legitimate, non-discriminatory reason. As such, the Defendant has met its burden. Because the Defendant has articulated non-discriminatory reasons for its conduct, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], . . . and the sole remaining issue [is] discrimination *vel non. . . .*" *Reeves*, 530 U.S. at 142–43, 120 S.Ct. 2097 (internal citations and quotation marks omitted). That is, the Plaintiff now must point to evidence that reasonably supports a finding of prohibited discrimination, i.e., that the Defendant's proffered non-discriminatory reasons are merely pretext for wrongful discrimination.

The court finds the Plaintiff has not demonstrated that the Defendant's proffered reason for her termination was pretext for age discrimination. The parties dispute both Jackie's conduct with regard to younger workers and the accuracy of Jackie's documentation of the Plaintiff's tardiness. Specifically, the Plaintiff argues that Jackie ignored the tardiness of, and did not discipline, two younger employees. In addition, the Plaintiff alleges that, although she may have been tardy on some occasions, she was not tardy on all the occasions recorded by Jackie.

With regard to Jackie allegedly turning a blind eye to the tardiness of younger employees, the Plaintiff has submitted only her own self-serving testimony. This is insufficient for the purposes of summary judgment. The Plaintiff's evidence in this regard is solely based on her belief that Jackie did not mark as tardy, or otherwise discipline, these two younger employees, one of whom was old enough himself to be protected under the ADEA. The court must accept as true the Plaintiff's testimony that she observed these employees arriving to work late. Nevertheless, the Plaintiff offers no evidence that: (1) Jackie was aware of the tardiness of these employees; (2) Jackie, if he were aware of their tardiness, did not actually mark them as tardy; (3) Jackie, if he marked these employees as tardy, did not either require them to make up the time or

otherwise discipline them. The Plaintiff's bald accusations in this regard do not support her claim because, although she can testify as to her personal observations, she cannot testify as to Jackie's observations or Jackie's conduct that she did not personally observe. She must submit other evidence (e.g., deposition testimony or documentation) in this regard. She has not done so here.

■ The Plaintiff also maintains that she did not arrive to work late on at least three of the days Jackie marked her as tardy, and that this is sufficient to demonstrate pretext. The court disagrees. Resolving all factual ambiguities and disputes in the Plaintiff's favor, the court shall assume that Jackie recorded the Plaintiff as being tardy on some days when she was not. Nevertheless, this fact, by itself, does not support an age discrimination claim. Indeed, for the purposes of an age discrimination claim, the Plaintiff must do more than demonstrate that Jackie somehow singled her out. The Plaintiff must also demonstrate that the motivation for the actions taken against her was based, at least in part, on her age. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (holding that Title VII is directed only at discrimination based upon the categories protected by Title VII); *Brewer v. Quaker State Oil Ref. Corp.,* 72 F.3d 326, 331 (3d Cir.1995) ("To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.") (internal quotation marks omitted).

■ From what the court can discern, the Plaintiff's evidence of age-based animus is that she overheard Jackie on the telephone stating that "older people" "slow down" and "should retire." This single remark does not demonstrate that Jackie terminated the Plaintiff because of her age. "[T]he stray remarks of a decisionmaker, without more, cannot prove a claim of employment discrimination...." *Abdu-Brisson,* 239 F.3d at 468. As the Plaintiff correctly points out, though, the court should not categorize a remark as "stray" or "not stray" and then disregard that remark if it falls under the "stray" category. *See Tomassi v. Insignia Fin. Group, Inc.,* 478 F.3d 111, 115–16 (2d Cir.2007). Instead, the court must consider all the evidence in its proper context. *See id.* at 115. Thus, "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Id.* "Where we described remarks as 'stray,' the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient." *Id.* at 115–16.

■ In the court's view, Jackie's alleged comment is not probative of discrimination here. To be clear, the Plaintiff's exact testimony was as follows: "I recall Paul Jackie in one of his comments to one of his friends to whom he was talking on the phone one day very loudly, I know he said something about older people, they slow down, and they should retire." (Dkt. # 35, Ex. 1, Weichman Dep. at 62:8–12.) The Plaintiff claims that this comment was directed at older workers in the workplace, and specifically at her. There is, however, no evidence that this comment was directed toward the Plaintiff. There is no evidence that this comment was directed toward employees of the Defendant. In fact, there is no evidence at all as to whom this

comment was directed because the Plaintiff does not provide, and does not seem to know, the context of Jackie's telephone conversation.[4] Thus, because the Plaintiff cannot provide this context, the comment, which the court believes is a quintessential "stray remark," is insufficient to demonstrate Jackie's discriminatory state of mind.[5]

Moreover, the Plaintiff testified that she does not even recall when Jackie made the comment. (*See id.* at 62:14–15.) As noted above, the closer a remark's relation to the allegedly discriminatory behavior is, the more probative that remark will be. Here, however, the Plaintiff cannot state when Jackie's comment was made. As a result, she cannot establish a temporal or causal relationship between the comment and her termination, and the comment loses its probative value.

The Plaintiff also alleges that Jackie described the Plaintiff as "self-destructive," and that when she complained to Orofino about Jackie ignoring questions she had posed to him, Orofino replied that Jackie was under instructions not to answer "stupid questions." Again, though, the court fails to see how either of these comments demonstrates a discriminatory state of mind for either Jackie or Orofino. Neither comment implicates the Plaintiff's age or age in general. Thus, these comments, although not entirely neighborly, are insufficient to support the Plaintiff's age discrimination claim.

The Plaintiff has presented no "other indicia of discrimination" to demonstrate the comments above are evidence that either Jackie or Orofino acted with discriminatory intent or singled out the Plaintiff because of her age. Indeed, as seen from the Plaintiff's own submissions, it appears that five out of the ten people (including the Plaintiff) Jackie supervised between December 2002 and October 2003 were over the age of forty. One of those five employees appears to have been approximately five years older than the Plaintiff, and another only two years younger. (*See* dkt. # 41, Ex. D.) Yet there is no evidence that other employees who were supervised by Jackie and entitled to protection under the ADEA had similar problems with Jackie. Instead, it seems that Jackie and the Plaintiff simply did not get along. As the Seventh Circuit has put it,

> "Federal law provides that an employee is to be free from racial [and age] discrimination in the workplace.... It does not guarantee a utopian workplace, or even a pleasant one. If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts."

*Vore v. Ind. Bell Tel. Co., Inc.,* 32 F.3d 1161, 1162 (7th Cir.1994); *see Farrar,* 537 F.Supp.2d at 350 (citing cases). Even assuming that Jackie or Orofino did single

---

4. For example, Jackie and his friend could have been discussing professional athletes. In such a situation, the comment, in the context of a conversation about sports, would not demonstrate any age-based animus on Jackie's part with regard to employees under his supervision.

5. The court also points out that *Tomassi,* which the Plaintiff relies upon, involved a supervisor making frequent age-related comments to and about an employee prior to, and at time of, that employee's termination. *See Tomassi,* 478 F.3d at 112–14. The situation in this case is factually distinguishable from that in *Tomassi,* as there is no evidence that Jackie made such frequent comments to or about the Plaintiff.

out the Plaintiff, the Plaintiff has not shown that such treatment occurred because of her age,[6] which is a *sine qua non* for an age discrimination claim under the ADEA or CFEPA. Consequently, with regard to the Plaintiff's ADEA and CFEPA age discrimination claims, the Defendant's motion for summary judgment (**dkt. # 34**) is **GRANTED**.

## C. ADEA/CFEPA RETALIATION

■ The Plaintiff alleges that the Defendant retaliated against her in violation of the ADEA and CFEPA. The ADEA and CFEPA prohibit retaliation against employees who exercise rights protected by those statutes. *See* 29 U.S.C. § 623(d); Conn. Gen.Stat. § 46a–60(a)(4). ADEA and CFEPA retaliation claims both use the *McDonnell Douglas* burden-shifting framework. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997); *Webster v. Pomperaug Reg'l Sch. Dist. 15*, No. 3:04CV1265(DJS), 2007 WL 987539, at *17 (D.Conn. March 30, 2007); *Brittell v. Dep't of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998).

■ "The court's first step is to determine whether the plaintiff established a *prima facie* case of retaliation." *Wanamaker*, 108 F.3d at 465. "The plaintiff's burden at this stage is slight—[s]he may establish a *prima facie* case with *de minimis* evidence." *Id.* "In order to establish a *prima facie* case of retaliation, [a plaintiff] must show that: (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d

Cir.2006); *see Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir.2006).

■ Next, if a plaintiff establishes a *prima facie* case, "[t]he burden then must shift to the [defendant] to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Finally, if the defendant does articulate a legitimate, nondiscriminatory reason for the adverse employment action, "[t]he plaintiff then has the opportunity to prove 'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext. . . .'" *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir.2004) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

With regard to the *prima facie* case, there is no dispute that the Plaintiff engaged in a protected activity about which the Defendant was aware, and that the Defendant took an adverse employment action against her. The Defendant argues that the fourth element, the "causal connection" between the adverse action and the protected activity, has not been met here. The Plaintiff argues that she has met all the elements of her *prima facie* case.

■ Absent direct evidence of retaliation, "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263

---

**6.** Indeed, there is evidence that Holmes, who supervised the Plaintiff prior to Jackie, and about whom the Plaintiff makes no com-

plaints, also had concerns that the Plaintiff was arriving late to work.

F.3d 208, 224 (2d Cir.2001) (internal quotation marks omitted). The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001) (collecting cases). Still, "[i]n the Second Circuit and district courts within the Second Circuit, time periods greater than one year have been found, in general, to be insufficient to establish this temporal relationship." *Wilks v. Elizabeth Arden, Inc.*, 507 F.Supp.2d 179, 196 (D.Conn.2007) (citing *Deravin v. Kerik*, No. 00 CV 7487(KMW)(KNF), 2007 WL 1029895, at *11 (S.D.N.Y. Apr. 02, 2007) (collecting cases)). "Within the time period of one year, there is no firm rule. In some cases, time periods ranging from twelve days to eight months have been found to show the necessary temporal proximity.... In other cases, time periods ranging from two-and-a-half months to eight months have been deemed insufficient to show the necessary temporal proximity." *Id.*; *see Deravin*, 2007 WL 1029895, at *11 nn. 21, 22 (collecting cases).

 The Defendant argues that the four-month gap between the Plaintiff's May 2003 VOE hotline complaint and her September 2003 termination is too great to show the temporal proximity needed for establishing the requisite causal connection. The court is not persuaded by this argument. First, as noted above, a four-month time period is not *per se* too lengthy a time period to establish a causal connection. Second, there is evidence that the Plaintiff supplemented her initial VOE complaint with additional complaints, and that Ehrens called Orofino on August 28, 2003 and Jackie on September 12, 2003 to gather further information. Taking into account the Plaintiff's supplemental complaints, and taking into account the those later dates on which Ehrens contacted Orofino and Jackie, the time period at issue would be even less than four months. Therefore, the court believes that the Plaintiff has shown a time period sufficient to demonstrate a causal connection, thus establishing her *prima facie* case of retaliation.

 The Defendant's legitimate, nondiscriminatory reason for the Plaintiff's termination is the same here as it was for the substantive age discrimination claims—according to the Defendant, the Plaintiff was excessively tardy when arriving to work. As the court noted above, this is sufficient to satisfy its burden under the *McDonnell Douglas* burden-shifting framework. Therefore, the Plaintiff must demonstrate that the Defendant's proffered reason is pretext for retaliation.

 The court finds that the Plaintiff has not met her burden. In the court's view, there is a lack of evidence demonstrating that the Plaintiff's termination was done in retaliation for her VOE complaints. The Defendant argues that the Plaintiff was terminated pursuant to its Punctuality Policy. Specifically, the Defendant claims that the Plaintiff was terminated because she was tardy twelve times in one year. Those alleged incidents of tardiness are the support for the Defendant's decision to terminate the Plaintiff pursuant to the Punctuality Policy. As the evidence shows, the bulk of the alleged incidents of tardiness occurred before the Plaintiff lodged her VOE complaint. Obviously, Jackie could not have marked the Plaintiff as tardy in retaliation for a protected activity that had not yet occurred.

This leaves, at most, the final two times that Jackie marked the Plaintiff as tardy. The Plaintiff presents no evidence that

these were anything more than a continuation of Jackie's usual modus operandi. That is to say, Jackie's conduct in marking the Plaintiff as tardy was the same before and after the Plaintiff lodged her VOE complaints. The court fails to see how this constitutes retaliation. Aside from the fact that she was terminated, the Plaintiff shows no evidence of pretext. Indeed, when asked whether she had any information (other than the termination itself) showing that Jackie or Orofino retaliated against her, the Plaintiff testified that she did not. (*See* dkt. # 35, Ex. 1, Weichman Dep. at 318–19.) Therefore, the court finds that the Plaintiff's retaliation claims fail as a matter of law. Consequently, with regard to the Plaintiff's ADEA and CFEPA retaliation claims, the Defendant's motion for summary judgment (**dkt. # 34**) is **GRANTED.**

### D. FMLA

■ The Plaintiff next alleges that the Defendant "interfered with, restrained, or denied Plaintiff's exercise of rights" under the FMLA. "The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir.2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). In addition, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Id.* (quot-

ing *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724–25, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003)).

■ "Under the FMLA, a plaintiff may raise separate causes of action for 'interference' and 'retaliation.'" *Esser v. Rainbow Adver. Sales Corp.*, 448 F.Supp.2d 574, 580 (S.D.N.Y.2006) (citing *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir.2004)). For interference claims, a plaintiff

> need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor·in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. . . . No scheme shifting the burden of production back and forth is required.

*Sista*, 445 F.3d at 175–76 (quoting *Potenza*, 365 F.3d at 167–68). "Retaliation claims, on the other hand, are to be analyzed under the *McDonnell Douglas* burden-shifting analysis." *Esser*, 448 F.Supp.2d at 580 (citing *Potenza*, 365 F.3d at 168 (recognizing two approaches for evaluating FMLA claims and applying the *McDonnell Douglas* standard to retaliation claims)).[7]

■ The court finds that the Plaintiff's FMLA interference claims fails as a matter of law. "To establish a prima facie case for interference under the FMLA, a plaintiff must establish: (1) that she is an 'eligible employee' under the FMLA; (2) that defendant[ ] constitute[s] an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that

7. The court notes that, although there are these two approaches to analyzing FMLA claims, and although the Plaintiff acknowledged these two approaches in her memorandum of law, the Plaintiff analyzed her FMLA claims using only the *McDonnell Douglas* approach. Nevertheless, in the interest of fairness, the court shall analyze the Plaintiff's FMLA claims using both approaches.

she gave notice to defendant[ ] of her intention to take leave; and (5) that defendant[ ] denied her benefits to which she was entitled by the FMLA." *Id.* (internal quotation marks omitted).

■■■ There is no dispute with regard to the first three elements. This leaves the fourth and fifth elements. There is nothing in the record to indicate how the Defendant denied the Plaintiff her FMLA benefits. The Defendant permitted the Plaintiff to take FMLA leave on August 6, 2003. She returned to her position on August 18, 2003 working a modified workday.[8] The Plaintiff admits that Orofino responded to her questions regarding obtaining a parking permit allowing her to park closer to the building, ensured that the Defendant performed an ergonomic evaluation of the Plaintiff's work station, and ordered a more appropriate chair for the Plaintiff. Indeed, the Plaintiff admits that neither Jackie nor Orofino expressed any disapproval of her leave or limited schedule. Thus, the court fails to see how the Defendant denied the Plaintiff any benefits. As a result, her FMLA interference claim fails.

■■■ This leaves the FMLA retaliation claim. The Plaintiff alleges that she was terminated because she exercised her rights under the FMLA. As noted above,

FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework detailed above. First, the Plaintiff must first establish a *prima facie* case. "In order to make out a prima facie case [of FMLA retaliation], [a plaintiff] must establish that: 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for h[er] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza,* 365 F.3d at 168. With regard to the prima facie case, the Defendant argues only that the Plaintiff cannot establish a causal connection between her exercising her FMLA rights and her termination. The court disagrees, as the Plaintiff took her leave on August 6, 2003 and was terminated on September 12, 2003. The court believes this temporal proximity is sufficient to satisfy the causal connection. Therefore, the Plaintiff has met her minimal *prima facie* burden.

■■■ The Defendant's legitimate, non-discriminatory reason is the same here as it was for the ADEA/CFEPA claims, and as the court noted above, this reason satisfies the Defendant's burden. Thus, the Plaintiff must show pretext. She has not done so here. In the court's view, the

---

**8.** The only circumstance that could conceivably support the Plaintiff's FMLA interference claim is where Jackie allegedly told the Plaintiff she'd have to make up the time she took off to attend a medical appointment. The court does not believe this is sufficient to support her claim because there is no indication that Jackie prohibited the Plaintiff from attending her medical appointment. Furthermore, although the parties do not discuss this issue, the court has doubts that the Plaintiff provided sufficient notice to have that medical appointment constitute FMLA-protected leave. The FMLA and accompanying regulations promulgated by the Department of Labor clearly contemplate thirty (30) days notice to be given for any intermittent leave. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a); *see Kaylor v. Fannin Reg'l Hosp., Inc.,* 946 F.Supp. 988, 998 (N.D.Ga. 1996). This includes intermittent doctor appointments. If notice cannot be provided thirty days prior to the leave, the employee shall provide such notice as is practicable. 29 U.S.C. § 2612(e)(2)(B). The Plaintiff has not shown when she knew about her appointment, or when specifically she notified Jackie. Thus, the Plaintiff has not met her burden showing that, for her medical appointment on September 8, 2003, she either provided thirty days notice or notice as is practicable.

Plaintiff has submitted even less evidence of pretext for her FMLA claims than she did for her age discrimination/retaliation claims. The fact that the Plaintiff felt Jackie showed her no compassion with regard to her medical condition, or that Jackie referred to her injury as "whatever it is you have," does not show retaliatory animus on Jackie's part. The Plaintiff's belief that Jackie showed her no compassion is evidence only of the Plaintiff's belief, not of Jackie's intent. The same holds true with regard to Jackie allegedly calling the Plaintiff's injury "whatever it is you have." In addition, and most importantly, the Plaintiff has admitted that neither Jackie nor Orofino expressed any disapproval of her FMLA leave or her modified work schedule. As a result, the Plaintiff cannot demonstrate pretext with regard to her FMLA retaliation claim. Consequently, with regard to the Plaintiff's FMLA claims, the Defendant's motion for summary judgment **(dkt. # 34)** is **GRANTED.**[9]

### E. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The Plaintiff's final claim is one for negligent infliction of emotional distress under Connecticut common law. The Defendant argues that this claim fails as a matter of law. The court agrees with the Defendant.

■■■ The Connecticut Supreme Court has held that "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Perodeau v. City of Hartford,* 259 Conn. 729, 750, 792

A.2d 752 (Conn.2002) (citing *Parsons v. United Tech. Corp.,* 243 Conn. 66, 88, 700 A.2d 655 (1997)). In reviewing such claims, "[t]he dispositive issue [is] whether the defendant's conduct during the termination process was *sufficiently wrongful* such that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." *Id.* at 751, 792 A.2d 752 (emphasis in original) (internal quotation marks omitted). "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Parsons,* 243 Conn. at 88–89, 700 A.2d 655 (internal quotation marks omitted).

■■■ Based on the above standard, the Plaintiff's negligent infliction of emotional distress claim fails. To establish such a claim, she must have submitted evidence that the Defendant's conduct during the termination process itself was sufficiently wrongful, and that the defendant should have realized its conduct involved an unreasonable risk of causing emotional distress that *might result in illness or bodily harm.* Actionable conduct occurring in the termination of employment usually involves removal from the actual premises of employment in an unreasonable manner or unreasonable treatment during the period of time in which the termination of employment is pending. *See Perodeau,* 259 Conn. at 729, 792 A.2d 752; *Parsons,* 243 Conn. at 66, 700 A.2d 655. Here, there is

---

9. The court points out that its decision with regard to the Plaintiff's employment discrimination claims did not use or depend on the "door report" submitted by the Defendant. The Plaintiff had objected to this submission, arguing that it should be excluded or given no probative weight. Because, however, the court did not rely upon the door report when making this decision, the court need not discuss its admissibility or probative value.

no evidence here that the Defendant carried out the Plaintiff's termination in an abnormal or outrageous manner. The Plaintiff's argument for her claim rests on her belief that her termination, and the motivations behind her termination, were wrongful. As discussed above, however, even if her termination were wrongful (which the court, in granting summary judgment on the ADEA, FMLA, and CFEPA claims, does not find), this would be insufficient to support a negligent infliction of emotional distress claim. Instead, the manner in which the Defendant carried out the termination must be wrongful, and the court sees no evidence of that. Consequently, with regard to the Plaintiff negligent infliction of emotional distress claim, the Defendant's motion for summary judgment (**dkt. # 34**) is **GRANTED.**

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (**dkt. # 34**) is **GRANTED. Judgement in favor of Chubb & Son, a division of Federal Insurance Co., shall enter on all counts of the amended complaint. The clerk shall close this file.**